## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| C.T., an individual,<br><br>                Plaintiff,<br><br>     v.<br><br>RED ROOF INNS, INC., WYNDHAM HOTELS &<br>RESORTS, INC.; BEST WESTERN<br>INTERNATIONAL, INC.; and LA QUINTA<br>HOLDINGS, INC.,<br>                Defendant. | Case No.   2:19-cv-05384 |

## DEFENDANT LA QUINTA HOLDINGS, INC.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, Defendant La Quinta Holdings, Inc. ("LQH") moves to dismiss the Complaint (Dkt. 1) for lack of personal jurisdictional and venue or, alternatively, to transfer venue to the Middle District of Florida pursuant to 28 U.S.C. § 1404.  In the event the Court were to deny these jurisdiction motions, LQH also moves to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim.  A Memorandum in support is attached.

Dated:  March 10, 2020                Respectfully submitted,

                                      */s/  Elisé K Yarnell*
                                      Michael R. Reed (0063995)
                                      Elisé K Yarnell (0093996)
                                        Hahn Loeser & Parks, LLP
                                      65 East State Street, Suite 1400
                                      Columbus, Ohio 43215
                                      T: (614) 233-5165
                                      F: (614) 221-5909
                                      mreed@hahnlaw.com
                                      eyarnell@hahnlaw.com

David S. Sager (*pro hac vice forthcoming*)
DLA Piper LLP (US)
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
T:  973.520.2550
F:  973.520.2551
david.sager@dlapiper.com

*Attorneys for Defendant*
*La Quinta Holdings, Inc.*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................1

II.   SUMMARY OF ALLEGATIONS .....................................................................2

III.  LEGAL STANDARD ........................................................................................2

    A.    Dismissal for Lack of Personal Jurisdiction Pursuant to FRCP 12(b)(2) ...............2

    B.    Transfer of Venue Pursuant to 28 U.S.C. § 1404(a) ...............................3

    C.    Failure To State A Claim Under Rule 12(b)(6) ......................................4

IV.  ARGUMENT ....................................................................................................5

    A.    This Court Lacks Personal Jurisdiction Over LQH ................................5

         1.    Ohio's Long-Arm Statute Does Not Establish Personal Jurisdiction Over LQH ...............................................................5

         2.    This Court Lacks Specific Jurisdiction Over LQH Under the Due Process Clause ....................................................................6

         3.    This Court Lacks General Jurisdiction Over LQH Under the Due Process Clause .......................................................................8

    B.    Even If This Court Finds Personal Jurisdiction, This Action Should Be Transferred For Convenience And In the Interest of Justice .................................9

    C.    The Complaint Fails To State A Claim Against LQH ...........................11

         1.    The Complaint Is An Impermissible "Shotgun" Pleading .........................11

         2.    The Complaint lacks well-pled allegations that LQH participated in a sex-trafficking venture .......................................................12

         3.    The Amended Complaint lacks well-pled allegations that LQH benefited, knowingly or otherwise, from Plaintiff's alleged trafficking ...............................................................................14

         4.    The Complaint does not include plausible allegations that LQH knew or should have known about Plaintiff's trafficking ......................14

         5.    This Court's decisions in other TVPRA cases should not prevent dismissal ........................................................................16

V.   CONCLUSION ...............................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Armco, Inc. v. Reliance Nat. Ins. Co.*,
  C-1-96-1149, 1997 WL 311474 (S.D. Ohio May 30, 1997)......................................9

*Bishop v. Lucent Techs., Inc.*,
  520 F.3d 516 (6th Cir. 2008) ...............................................................4

*Bistline v. Parker*,
  918 F.3d 849 (10th Cir. 2019) ............................................................12

*Boyle v. United States*,
  556 U.S. 938 (2009)...........................................................................13

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty.*,
  137 S. Ct. 1773 (2017).........................................................................7

*Brunner v. Hampton*,
  441 F.3d 457 (6th Cir. 2006) ...............................................................6

*Capital Specialty Ins. Corp. v. Splash Dogs, LLC.*,
  801 F. Supp. 2d 657 (S.D. Ohio 2011) .............................................3, 6

*CompuServe, Inc. v. Patterson*,
  89 F.3d 1257 (6th Cir. 1996) ...............................................................2

*Conn v. Zakharov*,
  667 F.3d 705 (6th Cir. 2012) ...............................................................3

*Conti v. Pneumatic Products Corp.*,
  977 F.2d 978 (6th Cir. 1992) ...............................................................7

*Crawford v. Columbus State Cmty. Coll.*,
  196 F. Supp. 3d 766 (S.D. Ohio 2016) ...............................................4

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)...........................................................................8, 9

*Geiss v. Weinstein Company Holdings LLC*,
  383 F. Supp. 3d 156 (S.D.N.Y. 2019)...............................................14

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011)...........................................................................15

*Goldstein v. Christiansen*,
70 Ohio St. 3d 232 (1994)........................................................................................6

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)................................................................................................6

*H.H. v. G6 Hospitality, LLC*,
2:19-CV-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019)........................................1, 16, 17

*Hogan v. Cleveland Ave Rest. Inc.*,
No. 2:15-CV-2883, 2018 WL 1475398 (S.D. Ohio Mar. 26, 2018)........................................4

*In re Hotel Indus. Sex Trafficking Litig.*,
MDL 2928, 2020 WL 581882 (U.S. Jud. Pan. Mult. Lit. Feb. 5, 2020)..................................1

*In re Hotel Indus. Sex Trafficking Litig.*,
MDL No. 2928, Dkt. 200.........................................................................................1

*Hunter v. Mendoza*,
197 F. Supp. 2d 964 (N.D. Ohio, 2002)........................................................................7

*Int'l Shoe Co. v. Wash.*,
326 U.S. 310 (1945)................................................................................................5

*Jane Doe 1 v. Red Roof Inns, Inc., et al.*,
1:19-cv-03840-WMR (N.D. Ga. Feb. 7, 2020).................................................................16

*Kelsey v. Goldstar Estate Buyers Corp.*,
3:13-CV-00354-HU, 2014 WL 1155253 (D. Or. Mar. 21, 2014) ...........................................15

*Kerobo v. Southwestern Clean Fuels Corp.*,
285 F.3d 531 (6th Cir. 2002) .....................................................................................9

*Kolbek v. Twenty First Cent. Holiness Tabernacle Church, Inc.*,
No. 10 Civ. 4124, 2013 WL 6816174 (W.D. Ark. Dec. 24, 2013)..........................................14

*Kuvedina, LLC v. Cognizant Tech. Sols.*,
946 F. Supp. 2d 749 (S.D. Ohio, 2013) .........................................................................9

*Lawson v. Rubin*,
17-CV-6404 (BMC), 2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018),
*reconsideration denied*, 2018 WL 7958928 (E.D.N.Y. June 11, 2018) ...........................16, 17

*Lee v. Ohio Educ. Ass'n*,
19-3250, --- F.3d ---, 2020 WL 881265 (6th Cir. Feb. 24, 2020)....................................11, 17

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
2:19-CV-849, 2019 WL 4929297 (S.D. Ohio Oct. 7, 2019) .........................................1, 16, 17

*Moncrief Oil Int'l Inc. v. OAO Gazprom*,
    481 F.3d 309 (5th Cir. 2007) ....................................................................2

*Nationwide Mut. Ins. v. Tryg Int'l Ins. Co., Ltd.*,
    91 F.3d 790 (6th Cir. 1996) ..........................................................3, 5, 6, 7

*Noble v. Weinstein*,
    335 F. Supp. 3d 504 (S.D.N.Y. 2018)......................................12, 13, 14

*Ohio Valley Bank Co. v. MetaBank*,
    2:19-cv-191, 2019 WL 4574528 (S.D. Ohio Sept. 20, 2019)..................9

*Ratha v. Phatthana Seafood Co., Ltd.*,
    CV 16-4271-JFW, 2017 WL 8293174 (C.D. Cal. Dec. 21, 2017) ...................12, 15

*Ray v. Spirit Airlines, Inc.*,
    836 F.3d 1340 (11th Cir. 2016) .............................................................13

*Ricchio v. McLean*,
    853 F.3d 553 (1st Cir. 2017) ........................................................12, 14

*Rosner v. Bank of China*,
    528 F. Supp. 2d 419 (S.D.N.Y. 2007)....................................................13

*Sabol v. Ford Motor Co.*,
    2:14-CV-543, 2014 WL 6603358 (S.D. Ohio Nov. 19, 2014) (Marbley, J.)......................4, 10

*Tech-Sonic, Inc. v. Sonics & Materials, Inc.*,
    2:12-CV-263, 2012 WL 4343103 (S.D. Ohio Sept. 21, 2012) ................10

*Thomas v. Progressive Cas. Ins. Co.*,
    No. 3:15-CV-456, 2016 WL 3766406 (S.D. Ohio July 11, 2016).......................4, 5

*United States v. Afyare*,
    632 F. App'x 272 (6th Cir. 2016) .............................................12, 13, 14

*Weiland v. Palm Beach Cty. Sheriff's Office*,
    792 F.3d 1313 (11th Cir. 2015) ...........................................................11, 12

*Weir v. Cenlar FSB*,
    16-CV-8650 (CS), 2018 WL 3443173 (S.D.N.Y. July 17, 2018) ...........13

**Statutes**

18 U.S.C. § 1391(b)(2) .......................................................................................9

18 U.S.C. § 1591(a) ....................................................................................11, 14

18 U.S.C. § 1595...........................................................................................11, 14

18 U.S.C. § 1595(a) ..................................................................................................11, 12, 14

28 U.S.C. § 1404(a) ......................................................................................................3, 9, 17

28 U.S.C. § 1404(b) .................................................................................................................3

Ohio Rev. Code § 2307.382 ..................................................................................................3, 6

Ohio Rev. Code § 2307.382(A) .................................................................................................5

Ohio Rev. Code § 2307.382(C) .................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 8 .....................................................................................................................12

Fed. R. Civ. P. 8(a)(2) .......................................................................................................11, 17

Fed. R. Civ. P. 12(b)(2) .......................................................................................................2, 17

Fed. R. Civ. P. 12(b)(6) ...................................................................................................4, 11, 17

Fed. R. Civ. P. 45(c)(1) ..........................................................................................................10

## MEMORANDUM OF LAW

### I.     INTRODUCTION

Plaintiff asserts a claim under the Trafficking Victims Protection Reauthorization Act ("TVPRA") against La Quinta Holdings, Inc. ("LQH") and other hotel defendants based on the theory that defendants knowingly benefited from their participating in a sex-trafficking venture that included Plaintiff.  *See* Dkt. 1, at ¶¶ 94-98.  In particular, Plaintiff alleges that unidentified, criminal traffickers caused her to engage in commercial sex at hotels in Fort Myers, Florida from 2008 to 2010, including a La Quinta®-branded hotel.

Plaintiff is a "resident and citizen of Florida," and the allegations in the Complaint concern activities that occurred exclusively within the state of Florida.  Dkt. 1, at ¶¶ 9(a), 68.  LQH is not incorporated in Ohio, does not maintain its principal place of business in Ohio, and is not alleged to maintain such a level of activity within this State such that it is at home here.  Simply, this action lacks any connection to Ohio.  Even if this Court had personal jurisdiction over LQH in this action (it does not), the case should be transferred to the U.S. District Court for the Middle District of Florida, where the alleged conduct occurred and potential witnesses and evidence are located and where the case could and should have been brought.[1]  In addition to these jurisdiction defects, Plaintiff's TVPRA claim should be dismissed as to LQH because the Complaint fails to allege

---

[1] Plaintiff's counsel also represents the plaintiffs in *M.A. v. Wyndham Hotels & Resorts, Inc.,* 2:19-CV-849, and *H.H. v. G6 Hospitality, LLC,* 2:19-CV-755.  On December 6, 2019 the Court denied motions to dismiss in the *H.H.* matter.  On December 8, 2019, Plaintiff's counsel filed this action and, the next day, Plaintiff's counsel filed a motion with the Judicial Panel on Multidistrict Litigation, urging the Panel to transfer several actions across the country to the Southern District of Ohio.  Plaintiff's counsel argued to the JPML that "Ohio's strong nexus to the sex trafficking epidemic has resulted in numerous filings in the Southern District of Ohio before Judge Marbley." *In re Hotel Indus. Sex Trafficking Litig.*, MDL No. 2928, Dkt. 200, at 8.  Apparently, this action was filed to create support of the motion to transfer to the MDL, which was denied.  *See In re Hotel Indus. Sex Trafficking Litig.*, MDL 2928, 2020 WL 581882, at *3 (U.S. Jud. Pan. Mult. Lit. Feb. 5, 2020).

facts sufficient to support a plausible inference that LQH participated in a venture that trafficked Plaintiff, that LQH knowingly benefited from such participation, or that LQH knew or should have known that any such venture was committing sex-trafficking crimes against Plaintiff.

## II.     SUMMARY OF ALLEGATIONS

The Complaint alleges that Plaintiff was subjected to sex trafficking by unnamed traffickers at five different hotels in Fort Myers, Florida between 2008 and 2010, including a La Quinta®-branded hotel ("La Quinta Facility").  *See, e.g.,* Dkt. 1, at ¶¶ 4, 52, 68, 73.  LQH, a holding company, is incorporated in the state of Delaware, and it does not maintain its principal place of business in Ohio.  Plaintiff is a Florida citizen, and nothing in the Complaint alleges that she has any connection with Ohio.  *See, e.g.*, Dkt. 1, at ¶ 9.  The Complaint contains no allegations specific to the alleged trafficking at the La Quinta Facility and asserts only general allegations about Plaintiff's alleged trafficking at a group of hotels, collectively.  *See* Dkt. 1, at ¶¶ 67-93.  Plaintiff does not allege that LQH, knew of Plaintiff or her alleged traffickers, or participated in the alleged trafficking in any way.  Plaintiff instead claims that the hospitality industry is generally aware that commercial sex and other illicit activities sometimes occur at hotels, but "refus[es] to prevent human trafficking on [its] hotel properties."   Dkt. 1, at ¶¶ 5, 7, 89.

## III.    LEGAL STANDARD

### A.     Dismissal for Lack of Personal Jurisdiction Pursuant to FRCP 12(b)(2)

When ruling on a motion to dismiss under Rule 12(b)(2) without an evidentiary hearing, "the court must consider the pleadings and affidavits in a light most favorable to the plaintiff[,]" but the party attempting to establish personal jurisdiction "bears the burden of showing that such jurisdiction exists." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996); *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). "In the face of a supported motion to dismiss, the plaintiff

may not rest on the pleadings, but must, by affidavit or otherwise, set forth specific evidence supporting jurisdiction." *Capital Specialty Ins. Corp. v. Splash Dogs, LLC.,* 801 F. Supp. 2d 657, 663 (S.D. Ohio 2011) (citing *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991)).

The determination of whether personal jurisdiction exists consists of two parts.  First, the court must determine whether it may exercise jurisdiction over the defendant pursuant to the forum state's long-arm statute.  *Nationwide Mut. Ins. v. Tryg Int'l Ins. Co., Ltd.,* 91 F.3d 790, 793 (6th Cir. 1996).  Second, the court must determine whether such exercise of personal jurisdiction satisfies standards of constitutional due process. *Id.*  "[U]nder Ohio's long-arm statute, 'there is no general jurisdiction over non-resident defendants; the jurisdiction must be specific and based on events giving rise to the cause of action.'" *Capital Specialty Ins. Corp.,* 801 F. Supp. 2d at 665 (quoting *Black v. Usher Transport,* 2:10–cv–0003, 2010 WL 2465379, at *2 (S.D. Ohio June 11, 2010); *see also Conn v. Zakharov,* 667 F.3d 705, 717 (6th Cir. 2012) ("Ohio law does not appear to recognize general jurisdiction over non-resident defendants, but instead requires that the court find specific jurisdiction under one of the bases of jurisdiction listed in Ohio's long-arm statute"). Jurisdiction under Ohio's long-arm statute must be based either on a defendant's activities within the forum state or activities outside of the forum state that caused injury to the plaintiff within the forum state.  *See* Ohio Rev. Code § 2307.382.

### B.    Transfer of Venue Pursuant to 28 U.S.C. § 1404(a)

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a).  "Upon motion . . . any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district."  28 U.S.C. § 1404(b).  Courts in the Southern District of Ohio generally employ a two-step process for determining whether a case

should be transferred to another district or division.  *See, e.g.*, *Sabol v. Ford Motor Co.*, 2:14-CV-543, 2014 WL 6603358, at *3 (S.D. Ohio Nov. 19, 2014) (Marbley, J.).  "First, the threshold determination is whether the action might have been brought in the proposed transferee court."  *Id.* (citing *DRFP, LLC v. Republica Bolivariana de Venezuela*, 945 F. Supp. 2d 890, 902 (S.D. Ohio 2013)).  Second, the court must decide "whether, considering all the relevant factors, 'the balance of convenience and the interest of justice strongly favors transfer.'"  *Id.* (quoting *DRFP*, 945 F. Supp. 2d at 902).

### C.    Failure To State A Claim Under Rule 12(b)(6)

In considering a motion to dismiss under Rule 12(b)(6), courts require a plaintiff to allege facts that "state a claim for relief that is plausible on its face" and, if accepted as true, are sufficient to "raise a right to relief above the speculative level."  *Crawford v. Columbus State Cmty. Coll.*, 196 F. Supp. 3d 766, 772 (S.D. Ohio 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).  A complaint cannot survive a motion to dismiss unless it contains "direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory."  *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)).  Mere legal conclusions, unsupported by factual allegations, are insufficient.  *Hogan v. Cleveland Ave Rest. Inc.*, No. 2:15-CV-2883, 2018 WL 1475398, at *2 (S.D. Ohio Mar. 26, 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Rather, "[l]egal conclusions 'must be supported by well-pleaded factual allegations . . . [that] plausibly give rise to an entitlement of relief.'"  *Thomas v. Progressive Cas. Ins. Co*., No. 3:15-CV-456, 2016 WL 3766406, at *2 (S.D. Ohio July 11, 2016) (quoting *Ashcroft*, 556 U.S. at 679).

IV.     **ARGUMENT**

A.      **This Court Lacks Personal Jurisdiction Over LQH.**

As discussed below, Ohio's long-arm statute is insufficient to confer on this Court personal jurisdiction over LQH.  Thus, the question becomes whether the exercise of personal jurisdiction is permitted by due process, which defines the outer limits of courts' power to render judgments over nonresident defendants.  *Id.*  A court's exercise of personal jurisdiction over a defendant violates that defendant's due process rights unless (1) the defendant has established minimum contacts with the forum state and (2) such exercise of personal jurisdiction would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.,* 326 U.S. at 316.

There are two kinds of personal jurisdiction: general and specific. *Nationwide Mut. Ins. Co,* 91 F.3d at 793. A court does not have specific personal jurisdiction over a defendant unless "the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum." *Id.*  On the other hand, a court does not have general personal jurisdiction over a defendant unless the "defendant's 'continuous and systematic' conduct within the forum state renders that defendant amenable to suit in any lawsuit brought against it in the forum state." *Id.* (quoting *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445–47 (1952)). This Court has neither specific or general personal jurisdiction over LQH, and accordingly this action should be dismissed.

1.      **Ohio's Long-Arm Statute Does Not Establish Personal Jurisdiction Over LQH.**

Ohio's long-arm statute provides that a court may exercise personal jurisdiction over a defendant "only [for] a cause of action *arising from* acts enumerated in [the statute]." *See* Ohio Rev. Code § 2307.382(C), (A) (emphasis added). A cause of action does not *arise from* an act enumerated in the long-arm statute unless there is a "proximate cause" relationship between the

two. *Brunner v. Hampton,* 441 F.3d 457, 465-66 (6th Cir. 2006). All the acts listed in Ohio's long-arm statute concern activities either taking place in Ohio or causing injury in Ohio and, as discussed above, Ohio's long-arm statute does not allow for general personal jurisdiction. *Capital Specialty Ins. Corp.,* 801 F. Supp. 2d at 665. The Ohio Supreme Court has held that Ohio's long-arm statute is more restrictive than the Due Process Clause of the Fourteenth Amendment, and thus the two must be analyzed separately. *See Goldstein v. Christiansen,* 70 Ohio St. 3d 232, 239 n.1 (1994).

Plaintiff has not even attempted to argue that the events she describes in her Complaint arise from any conduct enumerated in section 2307.382. The only subsection of Ohio's long-arm statute that could conceivably apply to LQH is the portion authorizing personal jurisdiction when a defendant caused "tortious injury in [Ohio] by an act or omission outside [Ohio] if [the defendant] regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in [Ohio]." Ohio Rev. Code § 2307.382. Plaintiff's alleged injuries occurred entirely in Florida and Plaintiff does not allege that any actions by LQH within the state of Ohio caused the events alleged in the Complaint. Nor does Plaintiff allege that any harm befell her in Ohio as a result of LQH's actions outside of the state. Accordingly, Ohio's long-arm statute does not permit this Court to exercise personal jurisdiction over LQH.

### 2. This Court Lacks Specific Jurisdiction Over LQH Under the Due Process Clause.

This Court lacks specific jurisdiction over LQH because Plaintiff does not allege that any of LQH's actions in Ohio caused her harm. A court may only exercise specific personal jurisdiction over a defendant when the claims in the lawsuit stem from the defendant's contacts with the forum state. *Nationwide Mut. Ins. Co.,* 91 F.3d at 793; *see also Goodyear Dunlop Tires*

*Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction").  As such, general contacts with the forum state are insufficient to establish specific personal jurisdiction, but rather, there must be a direct "affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum state." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017) (citing *Goodyear Dunlop Tires Operations, S.A.,* 564 U.S. at 919).

The law in this Circuit is clear:   a court may exercise specific personal jurisdiction over a defendant only if three elements are met. "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Third, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Conti v. Pneumatic Products Corp.*, 977 F.2d 978, 981 (6th Cir. 1992) (citing *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).  Thus, though "specific jurisdiction often may be premised on a single act of the defendant[,]" *Nationwide Mut. Ins. Co.*, 91 F.3d at 793, the defendant's act must have occurred within the forum state in order to support the exercise of personal jurisdiction.  When the actions giving rise to the complaint occurred outside the forum state, courts hold that the second prong of the Sixth Circuit's test is not met, and specific jurisdiction is not proper. *See Hunter v. Mendoza*, 197 F. Supp. 2d 964, 969 (N.D. Ohio, 2002) (holding that, where a car accident that gave rise to the suit occurred in California, "[t]he cause of action . . . [had] nothing to do with [the defendant's] . . . activities in Ohio" and the court lacked specific personal jurisdiction over the defendant).  Plaintiff does not allege that LQH engaged in

any activities in Ohio that were related to her alleged trafficking by a third-party in Florida. Dkt. 1, at ¶ 68. Indeed, Plaintiff does not allege any connection to Ohio whatsoever, and she certainly has not alleged that her "cause of action . . . [arose] from the defendant's activities" in Ohio.

### 3. This Court Lacks General Jurisdiction Over LQH Under the Due Process Clause.

This Court lacks general jurisdiction over LQH (which is not alleged in any event) because LQH's activities in Ohio are insufficient to render it "at home" in the forum state. A court with general personal jurisdiction over a defendant can "hear any and all claims against" that individual or entity. *Daimler AG v. Bauman,* 571 U.S. 117, 122 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A.,* 564 U.S. at 919). However, courts lack such jurisdiction unless a "corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] . . . at home in the forum state.'" *Id.* The Supreme Court narrowed the test for general personal jurisdiction when it held in *Daimler* that subjecting a defendant to jurisdiction in every state where it "engages in a substantial, continuous, and systematic course of business" was "unacceptably grasping" and therefore improper. *Id.* at 137-38. Post-*Daimler*, a corporate defendant is generally only "at home," and thus subject to general personal jurisdiction, in its "place of incorporation or principal place of business." *Id.* at 137.

LQH is incorporated in Delaware and maintains its principal place of business in New Jersey, and it cannot be said to be "at home" in Ohio. This is not one of the exceptional cases in which a corporation's operations in a forum are so substantial and of such a nature as to render the corporation at home in that State. *Id.* at 160 n.19. The example cited by the Supreme Court in leaving this option open concerned a case in which a foreign corporation temporarily relocated its head office to Ohio, rendering that state "the corporation's principal, if temporary, place of business." *Id.* at 129 (citing *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 4537, 448 (1952)).

LQH has not relocated, temporarily or otherwise, to Ohio. Merely conducting operations in a state does not rise to the level of the "exceptional case" envisioned by the Supreme Court in *Daimler*. For example, a software company's contacts with Ohio were not "so substantial and of such a nature as to render the corporation at home" when those contacts consisted of a contract with an Ohio bank and communications with the staff of that bank, transactions involving the software company that were processed in Ohio, and various ATM machines owned by the software company in the state. *Ohio Valley Bank Co. v. MetaBank*, 2:19-cv-191, 2019 WL 4574528, at *3-*4 (S.D. Ohio Sept. 20, 2019). As the *Daimler* court explained, "[a] corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' [in]." *Daimler AG,* 571 U.S. at 160 n.20.

**B.      Even If This Court Finds Personal Jurisdiction, This Action Should Be Transferred For Convenience And In the Interest of Justice.**

Even if this Court finds that it has personal jurisdiction over LQH, and that venue in the Southern District of Ohio is proper, this action should still be transferred to the Middle District of Florida. A case should be transferred when doing so would be "[f]or the convenience of parties and witnesses, in the interest of justice" and the case could have initially been brought in that district. 28 U.S.C. § 1404(a). The determination of whether transfer would be convenient for the parties and witnesses and serve the interest of justice is fact-specific and is made "on an individual basis by considering convenience and fairness." *Kerobo v. Southwestern Clean Fuels Corp.,* 285 F.3d 531, 537 (6th Cir. 2002). In making this determination, courts consider "public-interest factors, and private interest factors." *Kuvedina, LLC v. Cognizant Tech. Sols.*, 946 F. Supp. 2d 749, 761-62 (S.D. Ohio, 2013). There is no question that venue is proper in the Middle District of Florida, where all of the hotels at issue are located. *See* 18 U.S.C. § 1391(b)(2). *See, e.g., Armco, Inc. v. Reliance Nat. Ins. Co.*, C-1-96-1149, 1997 WL 311474, at *3 (S.D. Ohio May 30, 1997)

("When the cause of action has little connection with the chosen forum, the plaintiff's choice of forum is to be given less weight than such choice would be given otherwise."). The question, therefore, is whether the case should be transferred to that forum, balancing the various considerations relating to the convenience of the parties and witnesses, as well as the interests of justice. Such factors favor transfer.

Plaintiff has not disclosed her identity, thus limiting any investigation to date. It nevertheless stands to reason that the vast majority, if not all, of the witnesses with knowledge potentially relating to Plaintiff's alleged trafficking (including hotel employees) will reside in or around the Middle District of Florida. *Sabol*, 2014 WL 6603358, at *5 ("[T]he convenience of the witnesses, particularly nonparty witnesses important to the resolution of the case, is often cited as the most significant factor in ruling on a motion to transfer . . . ." (internal quotations omitted)). Plaintiff is also a resident of Florida—not Ohio. *See id.* at *5 (stating that "less consideration is given to [the Plaintiff's] choice [of venue] if the forum is not the plaintiff's residence."). Any physical evidence or police records likely will be located in Florida—not Ohio. *See id.* at *6 (favoring transfer to district where physical evidence is likely located). The fact that the events giving rise to the Plaintiff's claims occurred approximately 1,500 miles from Columbus, Ohio makes it virtually certain that this Court will not be able to compel non-party witnesses to testify at trial. *See* FED. R. CIV. P. 45(c)(1); *Sabol*, 2014 WL 6603358, at *7 (recognizing that transfer is appropriate to better ensure the availability of compulsory process for non-party witnesses at trial). And, because this case concerns alleged harm caused to a Florida resident at Florida hotels, the Middle District of Florida has a strong local interest in the resolution of this action, whereas the Southern District of Ohio has none. *See, e.g.*, *Tech-Sonic, Inc. v. Sonics & Materials, Inc.*, 2:12-CV-263, 2012 WL 4343103, at *3 (S.D. Ohio Sept. 21, 2012) (granting transfer where proposed

-10-

transferee court "has a greater interest" than the current forum "in resolving th[e] dispute").

### C.    The Complaint Fails To State A Claim Against LQH.

The TVPRA is a criminal statute that can give rise to civil claims for trafficking victims. *See* 18 U.S.C. §§ 1591(a), 1595(a).  Section 1595 triggers civil liability for those who commit sex-trafficking crimes as well as defendants who "knowingly benefit[] . . . from participation in a venture" that commits sex-trafficking crimes and who knew or should have known that the venture was committing such crimes against the plaintiff.  *See* 18 U.S.C. § 1595(a).  The Complaint does not include well-pled factual allegations sufficient to state a claim against LQH under the TVPRA.

#### 1.    The Complaint Is An Impermissible "Shotgun" Pleading.

As the Sixth Circuit recently recognized, "shotgun" pleadings violate Rule 8(a)(2) of the Federal Rules of Civil Procedure and therefore are subject to dismissal under Rule 12(b)(6).  *See Lee v. Ohio Educ. Ass'n*, 19-3250, --- F.3d ---, 2020 WL 881265, at *5 (6th Cir. Feb. 24, 2020) (citing *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015)).  A complaint is an impermissible "shotgun" pleading if it groups multiple defendants together and makes allegations against them collectively "without specifying which of the defendants are responsible for which acts or omissions."  *Weiland*, 792 F.3d at 1323.  "Shotgun" pleadings are "flatly forbidden" by Rule 8(a)(2) because they are "calculated to confuse the 'enemy,' and the court, so that theories for relief not provided by law . . . can be masked."  *Id.* at 1320 (internal quotations omitted).  The Complaint makes no allegations specific to LQH or the La Quinta Facility relating to Plaintiff's alleged trafficking beyond the general allegation that Plaintiff was trafficked at the La Quinta Facility.  Instead, the Complaint makes allegations generally against several unrelated entities, the "Defendant Hotels," as a group.  Dkt. 1, at ¶ 2 n.1 ("Collectively, Wyndham, BWI, LQH, and RRI may be referred to as 'Defendant Hotels.'"); *id.* at ¶¶ 7, 74-77, 81-93, 96-98.  The Complaint's use of "shotgun" pleading not only deprives LQH of the notice to

which it is entitled under Rule 8, it also has the effect of "mask[ing]" "theories for relief not provided by law" against LQH.  *Weiland*, 792 F.3d at 1320.  If Plaintiff has a good-faith basis for alleging facts that would support a TVPRA claim against LQH, Plaintiff is required to make those allegations.  Plaintiff has not done that.  Dismissal is warranted.

### 2. The Complaint lacks well-pled allegations that LQH participated in a sex-trafficking venture.

The TVPRA applies to multiple forms of trafficking, including sex trafficking.  To state a stand-alone civil claim, a Plaintiff must plausibly allege that a defendant "participat[ed] in a venture" that "violat[ed]" the criminal provisions of the TVPRA.  18 U.S.C. § 1595(a).  "Venture" is defined as "any group of two or more individuals *associated in fact*, whether or not a legal entity."  *Bistline v. Parker*, 918 F.3d 849, 873 (10th Cir. 2019) (emphasis added) (quoting 18 U.S.C. § 1591(e)(6)).  In the sex-trafficking context, the term "venture" means "a sex-trafficking venture" and only exists where "[t]wo or more people [] engage in sex trafficking together."  *See United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016).  "Participation" requires some "overt act" in furtherance of the trafficking; nonfeasance (i.e., the alleged failure to prevent trafficking) is not sufficient.  *Id.* (holding that "participating in a venture" requires "some overt act," and that "mere negative acquiescence" is not enough); *accord Ratha v. Phatthana Seafood Co., Ltd.*, CV 16-4271-JFW (ASX), 2017 WL 8293174, at *4 (C.D. Cal. Dec. 21, 2017).  "In other words, some participation in the sex trafficking act itself must be shown."  *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018).

Participation in a venture also requires a common "purpose" among the participants.  *See, e.g.*, *Bistline*, 918 F.3d at 874-75 (finding allegations sufficient to state a claim under the TVPRA where defendants "set up" a "scheme" that "was designed expressly *for the purpose* of facilitating [] crimes . . . ." (emphasis added)); *Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017) (finding

-12-

allegations sufficient to state a claim against hotel operators under the TVPRA where they rented hotel rooms to a trafficker "*for the purpose*" of trafficking the plaintiff (emphasis added)); *Boyle v. United States*, 556 U.S. 938, 944 (2009) (recognizing that, for a "venture" or "enterprise" to be "associated in fact," there must be "both interpersonal relationships and a common interest").

Mere commercial transactions (*e.g.*, loans, the sale of goods, or—in this case—the rental of a hotel room) do not give rise to a reasonable inference that the participants in the commercial transaction shared any common purpose or interest. *See, e.g.*, *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1352 (11th Cir. 2016) ("The second amended complaint fails because it has not plausibly alleged that the technology [] and public relations [] vendors named in the complaint shared a common purpose with Spirit."). Indeed, a defendant's lawful association with someone who commits sex-trafficking crimes is insufficient to show that the defendant itself "participat[ed]" in a sex-trafficking venture. *Afyare*, 632 F. App'x at 286; *Noble*, 335 F. Supp. 3d at 524. Construing the phrase "participation in a venture" otherwise would "create a vehicle to ensnare conduct that the statute never contemplated." *Afyare*, 632 F. App'x at 286.

In this case, the Complaint lacks any allegation that LQH shared a common purpose with the alleged traffickers. At most, the Complaint alleges that the alleged traffickers used the La Quinta Facility as an instrumentality for illicit activities, which is insufficient to establish a common purpose. *See, e.g.*, *Boyle*, 556 U.S. at 944; *Weir v. Cenlar FSB*, 16-CV-8650 (CS), 2018 WL 3443173, at *6 (S.D.N.Y. July 17, 2018) ("[B]eing an 'instrumentality' does not thereby mean one shares a common purpose. Defendants allegedly used the mail in furtherance of the scheme, but that would not make the Postal Service [] a member of the enterprise."); *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 428-29 (S.D.N.Y. 2007) ("The only factual allegation supporting this claim is that BoC provided 'indispensable banking services' to IFS and Siu Lap. The fact that

BoC provided general professional services to IFS and Siu Lap, services that BoC provides to the public at large, does not provide a basis for inferring that BoC, IFS, and Siu Lap shared a common unlawful purpose."). The conclusory allegation that LQH "failed to stop" the trafficking (Dkt. 1, at ¶ 63(i)) is not sufficient to state a claim under the TVPRA, which requires participation in a sex-trafficking venture. *See, e.g.*, *Afyare*, 632 F. App'x at 286; *Ricchio*, 853 F.3d at 555-56; *Noble*, 335 F. Supp. 3d at 524. Lacking well-pled allegations that LQH "participated in a venture" with Plaintiff's alleged traffickers, the Complaint should be dismissed as to LQH.

### 3. The Amended Complaint lacks well-pled allegations that LQH benefited, knowingly or otherwise, from Plaintiff's alleged trafficking.

To establish a stand-alone civil claim under Section 1595, a plaintiff must not only show that the defendant participated in a sex-trafficking venture, *but also* that the defendant "*knowingly* benefit[ed] . . . *from* [that] participation." 18 U.S.C. § 1595(a) (emphasis added). "[T]here must be a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit . . . ." *Geiss v. Weinstein Company Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019). In other words, a benefit is insufficient unless it derives directly from, and is knowingly received in exchange for participating in, a sex-trafficking venture. *See, e.g.*, *Kolbek v. Twenty First Cent. Holiness Tabernacle Church, Inc.*, No. 10 Civ. 4124, 2013 WL 6816174, at *16 (W.D. Ark. Dec. 24, 2013). The Complaint does not plausibly allege that LQH benefited, knowingly or otherwise, from Plaintiff's alleged trafficking, let alone from actually participating in a venture that trafficked Plaintiff. That is insufficient.

### 4. The Complaint does not include plausible allegations that LQH knew or should have known about Plaintiff's trafficking.

The last element for a stand-alone civil claim under Section 1595(a) requires a plaintiff to show that the defendant "knew or should have known" that the venture in which it participated caused plaintiff to commit commercial sex acts through force, fraud, or coercion. 18 U.S.C. §§

-14-

1591(a), 1595(a).  The Complaint relies on the conclusory allegation that the Defendants "knew or should have known" that C.T. was being trafficked.  *See, e.g.*, Dkt. 1, at ¶ 81.  Boilerplate, conclusory allegations like these should not withstand a motion to dismiss.  *See, e.g.*, *Kelsey v. Goldstar Estate Buyers Corp.*, 3:13-CV-00354-HU, 2014 WL 1155253, at *6 (D. Or. Mar. 21, 2014) (dismissing TVPRA claim where the complaint "regurgitate[ed]" the statute's language "woven together with conclusory statements and a generous use of 'and/or'").  The Complaint further implies that LQH "should have known" about Plaintiff's alleged trafficking because the hospitality industry generally is aware that commercial sex activity and other illicit activities sometimes occur at hotels.  But, such allegations of general knowledge are insufficient to adequately allege that a defendant knew or should have known about the trafficking of a particular person at a particular hotel.  *See, e.g.*, *Ratha*, 2017 WL 8293174, at *5 ("Plaintiffs argue that Rubicon and Wales knew or should have known that Phatthana allegedly engaged in [trafficking] based on general reports about human trafficking in Thailand and letters by advocacy groups . . . criticizing the working conditions at Phatthana's Songkhla factory. . . . Plaintiffs have failed to demonstrate that Rubicon or Wales knew or should have known that human trafficking existed at Phatthana's Songkhla factory.").

These defects are not cured by the allegations that Defendants were "willfully blind."  *See, e.g.*, Dkt. 1, at ¶ 62.  The Complaint does not allege facts sufficient to support a plausible inference that (i) LQH subjectively believed there was a high probability that Plaintiff was being trafficked, or (ii) LQH took deliberate steps to avoid confirming that Plaintiff was being trafficked.  *See, e.g.*, *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) (holding that "willful blindness" has "two basic requirements: (1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid

learning of that fact"). Plaintiff makes no well-pled factual allegations that anyone at the La Quinta Facility knew of or interacted with Plaintiff or her alleged traffickers, or that LQH took deliberate steps to avoid confirming that Plaintiff was being trafficked, let alone specify what those steps may have been. There simply are no well-pled factual allegations that could support a plausible inference that LQH knew or should have known that alleged traffickers had caused Plaintiff through force, fraud, or coercion to engage in commercial sex acts against her will. *See, e.g.*, *Lawson v. Rubin*, 17-CV-6404 (BMC), 2018 WL 2012869, at *14 (E.D.N.Y. Apr. 29, 2018), *reconsideration denied*, 2018 WL 7958928 (E.D.N.Y. June 11, 2018) (dismissing TVPRA claim against owner of condominium complex, reasoning that two incidents involving first responders were insufficient to give rise to a reasonable inference that the owner knew or should have known that the occupant of the penthouse was committing trafficking crimes).

5.     **This Court's decisions in other TVPRA cases should not prevent dismissal.**

This Court previously denied motions to dismiss in two cases asserting TVPRA claims against hotel defendants. *See M.A. v. Wyndham Hotels & Resorts, Inc.,* 2:19-CV-849, 2019 WL 4929297 (S.D. Ohio Oct. 7, 2019); *H.H. v. G6 Hospitality, LLC*, 2:19-CV-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019).[2] LQH respectfully urges the Court to dismiss the Complaint as to LQH, notwithstanding the *M.A.* and *H.H.* decisions.

As an initial matter, the allegations as to the La Quinta Facility do not rise to even the level of those in *H.H.* or *M.A.*, which the defendants argued were insufficient. *Compare Lawson*, 2018 WL 2012869, at *14. And since the Court's decisions in *H.H.* and *M.A.*, in which the Court

_____

[2] Though not binding on this Court, in the interim, the United States District Court for the Northern District of Georgia dismissed four cases involving similar claims and parties for failure to state a claim. *See, e.g.*, Minute Entry (Dkt. 242), *Jane Doe 1 v. Red Roof Inns, Inc., et al.*, 1:19-cv-03840-WMR (N.D. Ga. Feb. 7, 2020) ("The Court rules the timely motions to dismiss filed by the franchis[o]rs and argued today will be GRANTED . . . .").

rejected the defendants' "shotgun" pleading arguments (also known as "group" pleading), the Sixth Circuit has clarified that "shotgun" pleadings violate Rule 8(a)(2) and thus are subject to dismissal under Rule 12(b)(6). *See Lee*, --- F.3d ---, 2020 WL 881265, at *5 (holding that "shotgun" pleading "violated Rule 8(a)(2)'s requirement that [plaintiff] provide the defendants 'adequate notice of the claims against them and the grounds upon which each claim rests'" (quoting *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018)).

In addition, the Court found that the complaints in *M.A.* and *H.H.* satisfied the "participation in a venture" requirement of the TVPRA based on allegations that hotels rented rooms to someone who committed sex trafficking crimes there. *See M.A.*, 2019 WL 4929297, at *9. But, as explained above, that is not sufficient. Furthermore, the allegations in the Complaint do not support a plausible inference that the owners anyone at the La Quinta Facility knew or should have known that the alleged traffickers caused Plaintiff to commit commercial sex acts against her will through force or coercion. Indeed, the Complaint alleges that the alleged traffickers "shuffled [Plaintiff] from hotel to hotel" (Dkt. 1, at ¶ 73), apparently to conceal their illicit activities. *See, e.g.*, *Lawson*, 2018 WL 2012869, at *14. There simply are no well-pled factual allegations that could support a plausible inference that LQH knew or should have known of Plaintiff's alleged. The Complaint fails to state a claim against LQH and should be dismissed.

## V.    CONCLUSION

For the foregoing reasons, LQH respectfully requests that the Court dismiss the claim against LQH under Rule 12(b)(2) for lack of personal jurisdiction or, in the alternative, transfer venue to the Middle District of Florida under 28 U.S.C. § 1404(a). In the event the Court were to deny these jurisdictional and venue motions, LQH also moves to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim.

Dated:  March 10, 2020    Respectfully submitted,

            */s/* Elisé K. Yarnell    
            Michael R. Reed (0063995)
            Elisé K Yarnell (0093996)
            Hahn Loeser & Parks LLP
            65 East State Street, Suite 1400
            Columbus, Ohio 43215
            (614) 233-5165
            mreed@hahnlaw.com
            eyarnell@hahnlaw.com

            David S. Sager (*pro hac vice forthcoming*)
            DLA Piper LLP (US)
            51 John F. Kennedy Parkway, Suite 120
            Short Hills, New Jersey 07078-2704
            973.520.2550
            david.sager@dlapiper.com

            Christopher B. Donovan (*pro hac vice forthcoming*)
            DLA Piper LLP (US)
            1000 Louisiana Street, Suite 2800
            Houston, Texas 77002
            713.425.8449
            christopher.b.donovan@dlapiper.com

            *Attorneys for Defendant*
            *La Quinta Holdings, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 10th day of March 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notice of such filing to all attorneys of record.

/s/  Elisé K. Yarnell