**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| C.T., an individual, | ) |
| Plaintiff, | ) CASE NO. 2:19-cv-05384 |
| v. | ) |
| RED ROOF INNS, INC., WYNDHAM HOTELS & RESORTS, INC., BEST WESTERN INTERNATIONAL, INC., and LA QUINTA HOLDINGS, INC., | ) |
| Defendants. | ) |

**REPLY IN SUPPORT OF DEFENDANT WYNDHAM HOTELS & RESORTS, INC.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

### I. INTRODUCTION

Plaintiff has failed to state a claim against Wyndham Hotels & Resorts, Inc. ("WHRI"), but, even if she had, she cannot proceed in this Court because there is no basis to find personal jurisdiction over WHRI in Ohio. WHRI is not incorporated and does not maintain a principal place of business in Ohio, and Plaintiff's allegations have no connection to Ohio. Rather, Plaintiff is a resident of Florida, and she alleges that she was trafficked at Florida hotels. Plaintiff does not dispute these facts. As a result, her Complaint against WHRI should be dismissed or, alternatively, this case should be transferred to the Middle District of Florida under 28 U.S.C. § 1404(a).

### II. ARGUMENT

#### A. Plaintiff Has Not Stated A Basis For General Personal Jurisdiction.

Plaintiff, who bears the burden of establishing personal jurisdiction, has not alleged a basis for jurisdiction over WHRI in this case. *See, e.g.*, *CompuServe, Inc. v. Patterson*, 89 F.3d

1257, 1267-68 (6th Cir. 1996).  In response to WHRI's motion, Plaintiff does not (because she cannot) contend that WHRI is subject to specific personal jurisdiction by this Court in this case, and thus has waived that argument.  *CHKRS, LLC v. City of Dublin, Ohio*, 2020 WL 1331926, *7 (S.D. Ohio Mar. 23, 2020) (citing cases).  Rather, Plaintiff argues that the Court has general personal jurisdiction over WHRI because WHRI conducts business unrelated to this dispute within Ohio.  Plaintiff's argument stands at odds with settled law.

### 1. WHRI is not "at home" in Ohio.

Plaintiff misreads the law.  In *Daimler AG v. Bauman*, 571 U.S. 117 (2014), the Supreme Court unequivocally rejected the argument that a "substantial, continuous, and systematic course of business" was sufficient to establish general jurisdiction, labeling it "unacceptably grasping." *Id.* at 137.  Yet, that is the theory of general jurisdiction on which Plaintiff relies.  In *BNSF Railway Co. v. Tyrrell*, 137 S. Ct. 1549 (2017), the Supreme Court again rejected a theory of general jurisdiction premised on a domestic railroad company regularly conducting business in the forum state.  In *BNSF*, the plaintiff argued that the railroad company's extensive track and large number of in-state employees made it "at home" in Montana. *Id.* at 1559. In rejecting that argument, the Supreme Court stated that "in-state business . . . does not suffice to permit the assertion of general jurisdiction over claims . . . that are unrelated to any activity occurring in [the state]." *Id.*  "[A] corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* (quoting *Daimler*, 134 S. Ct. at 762 n.20).

Plaintiff ignores these holdings and offers no distinguishing facts to support the notion that WHRI is "at home" in Ohio.  Rather, Plaintiff points to WHRI's "high levels of business activity" in Ohio, namely the number of its hotels in this state. Dkt. 40, at 11. That is insufficient.  WHRI does not have (nor does the Complaint allege) a uniquely high percentage of its branded hotels in Ohio.  Under Plaintiff's reasoning, she could have sued WHRI in any jurisdiction in the

2

country, a result that is directly contrary to *Daimler* and *BNSF*. WHRI is not incorporated in Ohio and does not have its principal place of business within the state. As Plaintiff concedes, WHRI is a Delaware corporation with a principal place of business in New Jersey. *See* Dkt. 40, at 14 n.17. The alleged volume of WHRI's "business activity" is not sufficient grounds to assert general jurisdiction.

### 2. WHRI is not subject to process under Ohio's long-arm statute.

Plaintiff's waiver of any argument for specific jurisdiction, coupled with the absence of general jurisdiction, require dismissal. But Plaintiff's personal jurisdiction arguments also fail because Plaintiff cannot satisfy Ohio's long-arm statute. Plaintiff argues that she is not required to satisfy the long-arm statute because her claim arises under federal law, Dkt. 40, at 10, a proposition that is not well supported in the law of this Court or the Sixth Circuit. In particular, cases within this Circuit routinely recognize the rule that, even if the court is exercising federal question jurisdiction, Ohio's long-arm statute must be met in order to exercise jurisdiction over an out-of-state defendant. *E.g.*, *Bird v. Parsons*, 289 F.3d 865 (6th Cir. 2002) ("Where a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists 'if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process."); *Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 583 (S.D. Ohio 2016) (Marbley, J.) (quoting *Bird*); *LML Investments, LLC v. Liegey*, No. 2:12-cv-723, 2012 WL 6023863, *2 (S.D. Ohio Dec. 4, 2012) (following *Bird*); *see also Georgalis v. Facebook, Inc.*, 324 F. Supp. 3d 955 (N.D. Ohio 2018) ("Whether a federal court's jurisdiction arises under 28 U.S.C. §§ 1331 or 1332, Plaintiff must satisfy the forum state's requirements for personal jurisdiction." (citing cases)). In light of that rule, and the fact that Ohio's long-arm statute does not reach to the extent permissible under the Due Process Clause, this Court has

3

previously suggested that Ohio law may not permit general jurisdiction over an out-of-state defendant under any circumstances. *Ohio Valley Bank Co. v. MetaBank*, 2:19-cv-00191, 2019 WL 4574528, *3 (S.D. Ohio Sept. 20, 2019) (Marbley, J.).

Despite this body of cases, Plaintiff cites unsupported dicta to argue for a contrary rule. *See* Dkt. 40, at 10 (quoting *Capitol Specialty Ins. Corp. v. Splash Dogs, LLC*, 801 F. Supp. 2d 657, 663-64 (S.D. Ohio 2011)). *Capitol Specialty* does not include any authority in support of the assertion that personal jurisdiction over a federal cause of action need not satisfy the forum's long-arm statute. 801 F. Supp. 2d at 663-64. In any event, the sentence on which Plaintiff relies is dicta; *Capitol Specialty* involved the exercise of the court's diversity jurisdiction under Ohio's long-arm statute to establish personal jurisdiction. In this case, Plaintiff did not serve WHRI according to Ohio's long-arm statute, and she did not serve WHRI within the state of Ohio. WHRI is not domiciled in Ohio. Therefore, this Court cannot exercise general personal jurisdiction over WHRI. *See Filtrexx Int'l, LLC v. Truelsen*, No. 5:12CV58, 2013 WL 587582, at *8 (N.D. Ohio Feb. 13, 2013) (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011)) (finding no general jurisdiction over an out-of-state defendant who did not consent to jurisdiction and was not physically served in Ohio).

In requesting jurisdictional discovery, Plaintiff fails to state what facts could establish general personal jurisdiction over WHRI, and there is no basis for such discovery. *See Indah v. S.E.C.*, 661 F.3d 914, 925 n.7 (6th Cir. 2011) (explaining that the district court did not abuse its discretion by denying a vague request for jurisdictional discovery). Plaintiff also alludes to the possibility of seeking leave to amend the Complaint to add a "civil conspiracy count applicable to all defendants in this action" in an effort to cure the Complaint's jurisdictional shortcomings.

*See* Dkt. 40, at 12 n.15. Plaintiff has not done so, and Plaintiff lacks any plausible, good-faith basis for such an allegation.

### B. Venue Is Improper Because Any Efficiencies in Deciding Legal Issues Together are Outweighed by the Impact on Access to Witnesses

Because this Court lacks personal jurisdiction over WHRI, venue is necessarily improper, and the Court cannot transfer this case to another venue under § 1404(a). *Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993). If, however, the Court were to conclude that WHRI is subject to the jurisdiction of this Court in this case, it should nonetheless transfer venue to the Middle District of Florida, where Plaintiff resides and all of the alleged conduct occurred, for the convenience of the parties and in the interest of justice. Plaintiff does not reside in Ohio, and none of the likely witnesses are present here. Nor does Plaintiff dispute that venue would be proper in the Middle District of Florida, where the alleged conduct occurred and where Plaintiff and witnesses are located. And, while Plaintiff chose this forum (albeit improperly), her choice should receive less weight because she does not reside or work in Ohio. *Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 850 (S.D. Ohio 2007). Moreover, Plaintiff does not argue that the Southern District of Ohio is more convenient for her, instead citing to this Court's decision in *Doe S.W. v. Lorain-Elyria Motel, Inc.*, 2020 WL 1244192 (S.D. Ohio Mar. 16, 2020). In that case, the Court held that a plaintiff who alleged sex trafficking in Ohio hotels could file suit in the Southern District of Ohio rather than the Northern District, where the trafficking allegedly occurred. Venue was not improper because any Ohio court had specific personal jurisdiction over the defendants under Ohio's long-arm statute. In this case, on the other hand, the Court lacks personal jurisdiction over WHRI and there are *no* witnesses within this District. The distance between this Court and the location of the alleged conduct will be inconvenient for non-

5

party witnesses and will hamper WHRI's ability to subpoena fact witnesses. This is not simply an issue of traveling to a different courthouse.

Plaintiff contends that litigating in this Court will promote judicial efficiency because other plaintiffs have sued WHRI in the Southern District of Ohio under the TVPRA. Plaintiff is wrong. Indeed, Plaintiff does not cite a case supporting the notion that venue is proper simply because other cases involving similar subject matter are pending. The Panel on Multidistrict Litigation already found that common factual questions do not exist among these cases. *See In re Hotel Indus. Sex Trafficking Litig.*, MDL 2928, 2020 WL 581882, at *3 (U.S. Jud. Pan. Mult. Lit. Feb. 5, 2020) (denying the motion for transfer to the MDL panel). The fact that a particular judge has experience with a type of claim or particular parties does not lend itself to the notion that traditional factors governing personal jurisdiction and venue do not apply. To the contrary, myriad factors, such as the convenience to witnesses, access to proof, and the venue's interest in the outcome, favor transfer to the Middle District of Florida. *See* Dkt. 23, at 10-11. Undoubtedly, Plaintiff's counsel prefer this District because they have several other cases pending here, but forum shopping should be discouraged rather than rewarded. If this case is not dismissed, venue should be transferred to the Middle District of Florida.

### C. Plaintiff's Complaint Fails to State a Claim.

If the Court were to proceed to the merits, Plaintiff's Complaint should still be dismissed for failure to state a claim because Plaintiff has engaged in impermissible group pleading and has failed to allege facts plausibly giving rise to liability in this case.

#### 1. The Complaint is an impermissible shotgun pleading.

"Shotgun" pleadings violate Rule 8(a)(2) of the Federal Rules of Civil Procedure and therefore are subject to dismissal under Rule 12(b)(6). *See Lee v. Ohio Educ. Ass'n*, 951 F.3d

6

386, 392-93 (6th Cir. 2020) (citing *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015)). Plaintiff concedes that the Complaint rests on "collective allegations" (Dkt. 40, at 14-15), which is a form of impermissible "shotgun" pleading. *See, e.g.*, *Weiland*, F.3d at 1323; *Joseph v. Bernstein*, 612 F. App'x 551, 553 (11th Cir. 2015) ("[T]he complaint failed to satisfy the requirements of Rule 8 of the Federal Rules of Civil Procedure because it indiscriminately grouped all Defendants together without explaining the factual basis for each of the Defendants' liability."). If Plaintiff has a good-faith basis for asserting a claim against WHRI, federal pleading standards require her to make well-pled factual allegations specific to WHRI sufficient to support each element of each claim. The Complaint, and its reliance on overly-general and collective allegations, clearly falls short of that. Allowing the Complaint to go forward would deprive WHRI of the notice to which it is entitled, and would require WHRI to defend a claim without knowing the factual bases for it.

  **2. The Complaint does not state a TVPRA claim.**

Plaintiff's cause of action under § 1595(a) requires Plaintiff to plausibly allege that a defendant participated in a venture that violated the criminal provisions of the TVPRA, knowingly benefited from any such participation, and that the defendant knew or should have known of the venture's commission of sex-trafficking crimes. 18 U.S.C. § 1595(a). As explained in the WHRI's motion, the Complaint lacks any such allegations.

Plaintiff argues that participation in a "venture" under the TVPRA does not require a "common purpose," criticizing WHRI's citation to cases construing "enterprise" under RICO. Plaintiff ignores that the definition of a TVPRA "venture" very closely tracks the definition of "enterprise" under RICO, as both require that participants be "associated in fact." *Compare* 18 U.S.C. § 1591(e)(6) (defining "venture" as "any group of two or more individuals ***associated in fact***, whether or not a legal entity" (emphasis added)), *with* 18 U.S.C. § 1961(4) (defining

7

"enterprise" as "any . . . group of individuals *associated in fact* although not a legal entity" (emphasis added)); *Ricchio v. McLean,* 853 F.3d 553, 556 (1st Cir. 2017) (Souter, J.) (recognizing that a "venture" only exists for purposes of Section 1595(a) where "two or more individuals" are "associated in fact"); *accord Bistline v. Parker*, 918 F.3d 849, 873 (10th Cir. 2019).

And where Congress uses similar language in two statutes, as with a TVPRA "venture" and a RICO "enterprise," courts presume that "Congress intended that text to have the same meaning in both statutes." *Smith v. City of Jackson, Miss.,* 544 U.S. 228, 233 (2005); *Northcross v. Bd. of Ed. of Memphis City Sch.,* 412 U.S. 427, 428 (1973).  In the RICO context, the Supreme Court has recognized that, for persons to be "associated in fact," there must be "both interpersonal relationships and a common interest." *Boyle v. United States,* 556 U.S. 938, 946 (2009)); *United States v. Turkette,* 452 U.S. 576, 583 (1981) (explaining that association in fact requires "a group of persons associated together for a common purpose").  Accordingly, in determining whether a defendant has "associated in fact" with a criminal trafficker for purposes of participating in a TVPRA "venture," the inquiry depends in part on whether the alleged participants of the venture associated together for a common purpose and had interpersonal relationships. *See Plaintiff A v. Schair,* 2:11-CV-00145-WCO, 2014 WL 12495639, at *2 (N.D. Ga. Sept. 9, 2014) (finding that the civil remedy provisions in the TVPRA and RICO operate in the same manner); *Boyle*, 556 U.S. at 944 ("That an 'enterprise' must have a purpose is apparent from the meaning of the term in ordinary usage, i.e., a 'venture,' 'undertaking,' or 'project.' The concept of 'association' requires both interpersonal relationships and a common interest." (internal citations omitted)).

8

A commercial transaction (*e.g.*, the rental of a hotel room) does not give rise to a reasonable inference that the participants in such a transaction shared a common purpose or otherwise "associated in fact." *See, e.g.*, *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1352 (11th Cir. 2016) (dismissing RICO claims because there were not allegations that the defendant technology and public relations vendors shared a common purpose or otherwise "associated in fact" with Spirit Airlines); *Ellis v. JPMorgan Chase & Co.*, 752 F. App'x 380, 382 (9th Cir. 2018) (dismissing RICO claims and stating that the "mere existence of service contracts . . . is insufficient to establish a common purpose"); *United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 855 (7th Cir. 2013) (holding that "a commercial relationship" is insufficient to show that parties were associated in fact).

Plaintiff acknowledges that the Travelodge®- and Days Inn®-branded hotels at issue are franchised facilities independently owned and operated by third-parties—not WHRI, which is the ultimate parent company of the franchisors of those hotel brands. *See, e.g.*, Dkt. 40, at 25-26. To be clear, WHRI shares no common corporate ownership with the independent third-party franchisees that owned or operated the Travelodge®- and Days Inn®-branded hotels at issue. There is no allegation WHRI even knew of or interacted with Plaintiff or her alleged traffickers, let alone that WHRI shared a common purpose or otherwise "associated in fact" with Plaintiff's traffickers. Indeed, Plaintiff's traffickers rented rooms at the Travelodge®- and Days Inn®-branded hotels, if at all, from the third-party franchisees that owned and operated those facilities—not WHRI or any of its affiliates. *See, e.g.*, *Doe 1 v. Red Roof Inns, Inc.*, 1:19-CV-03840-WMR, 2020 WL 1872335, at *3 (N.D. Ga. Apr. 13, 2020) (dismissing complaint, noting

the absence of any well-pled allegation that hotel franchisor defendants or corporate affiliates, including WHRI, "ever dealt with" the plaintiff or the alleged traffickers).

At most, the Complaint alleges that the hotels at issue were used by the alleged traffickers as instrumentalities for the traffickers' venture, which is insufficient to establish that the hotel operators (let alone WHRI) associated in fact with the traffickers. *See, e.g.*, *Weir v. Cenlar FSB*, 16-CV-8650 (CS), 2018 WL 3443173, at *6 (S.D.N.Y. July 17, 2018) ("[B]eing an 'instrumentality' does not thereby mean one shares a common purpose. Defendants allegedly used the mail in furtherance of the scheme, but that would not make the Postal Service [] a member of the enterprise."); *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 428-29 (S.D.N.Y. 2007) (finding the provision of "indispensable banking services" insufficient and stating that providing services available "to the public at large, does not provide a basis for inferring that [Defendants] shared a common unlawful purpose").

In response, Plaintiff relies heavily on this Court's decisions in *M.A. v. Wyndham* and *H.H. v. G6*, but ignores that those decisions recognized that "participation" in a "venture" requires agreement among the alleged "venture" participants (though WHRI continues to maintain that the allegations in *M.A.* and *H.H.* fall short). *See M.A. v. Wyndham Hotels & Resorts, Inc.*, No. 2:19-CV-849, 2019 WL 4929297, *7-8 (S.D. Ohio Oct. 7, 2019) (requiring "a showing of a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement"); *H.H. v. G6 Hosp., LLC*, No. 2:19-CV-755, 2019 WL 6682152, *4-5 (S.D. Ohio Dec. 6, 2019) (same). Similarly, a common purpose among the "venture" participants was alleged in *Ricchio*, 853 F.3d at 556, but analogous facts to support a finding of

common purpose have not been alleged here. The Complaint therefore fails to allege "participation" in a sex-trafficking venture.

Plaintiff also fails to meaningfully rebut authority cited by WHRI recognizing that Section 1595(a) requires a "causal relationship" between conduct furthering the venture and the receipt of a benefit. *Geiss v. Weinstein Company Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019). In other words, the benefit must derive directly from the defendant's participation in a sex-trafficking venture. The Complaint at best alleges that WHRI's subsidiary franchisors of the Travelodge® and Days Inn® hotel brands received royalties through franchise relationships with the independent third-party franchisees that actually owned and operated the facilities at issue.  *See* Dkt. 1, at ¶ 60.  That is insufficient.

Finally, Plaintiff's Complaint does not plausibly allege that WHRI "knew or should have known" that Plaintiff herself was being trafficked. *See, e.g.*, *Doe 1*, 2020 WL 1872335, at *3 ("[T]he statute targets commercial sex activity that is forced or coerced; it does not address commercial sex activity generally.").[1]  There are no allegations as to how WHRI—as the ultimate parent company to the franchisors of the Travelodge® and Days Inn® hotel brands and not the individual franchisees—should have known of Plaintiff or her alleged traffickers.  Nor are there any allegations specific to the alleged trafficking at any particular hotel that might allow for an inference that those individual hotels knew or should have known of the Plaintiff's alleged trafficking.  The Complaint's general, conclusory allegations therefore fall short of what is needed to suggest that WHRI "should have known" of Plaintiff's trafficking.

---

[1] 18 U.S.C. § 1591(e)(2) defines "coercion" as "(A) threats of serious harm to or physical restraint against any person; (B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or (C) the abuse or threatened abuse of law or the legal process."

### 3. The Complaint does not allege a basis for vicarious liability.

Finally, Plaintiff argues that WHRI can be held vicariously liable for the alleged wrongs of independent third-party franchisees. In other words, Plaintiff argues that WHRI can be liable under the TVPRA even if WHRI itself did not commit actionable conduct under Section 1595(a) of the TVPRA. Plaintiff is wrong. As an initial matter, Plaintiff cannot create a basis for liability that does not exist in the TVPRA itself. *See Noble v. Weinstein,* 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) (rejecting arguments that would read "a form of liability into" the TVPRA that is not provided by the statute itself (citing *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 183 (1994)); *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 287 (D. Conn. 2013) (rejecting argument that Section 1595 of the TVPRA allows for "secondary liability").

Moreover, even assuming *arguendo* that a franchising relationship could be used to circumvent the actual elements of a TVPRA claim, Plaintiff's Complaint still falls short because it relies on conclusory, boilerplate allegations of control. *See Bricker v. R & A Pizza, Inc.*, 804 F. Supp. 2d 615, 623 (S.D. Ohio 2011) (dismissing negligence claim against franchisor where the complaint lacked well-pled factual allegations that the franchisor exerted control over the franchisee's daily operations); *Puente v. Garcia*, C.A. L-86-134, 1986 WL 14372, at *2 (Ohio Ct. App. Dec. 12, 1986) ("If the franchisor has no power over the daily operations of the business, so as to vest the franchisor with control within the definition of agency, the franchisor cannot be held vicariously liable for the negligence of a franchisee."); *Barrett-O'Neill v. Lalo, LLC*, 2:14-CV-194, 2014 WL 3895679, at *4 (S.D. Ohio Aug. 8, 2014) ("All that the franchise agreement in this case does is give Defendants control over the quality of services its franchisee provides. A franchisor's insuring the uniformity and standardization of services, however, does

not give rise to an agency relationship." (internal alterations omitted) (quoting *Viches v. MLT, Inc.,* 127 F. Supp. 2d 828, 832 (E.D. Mich. 2000)).

Indeed, Plaintiff merely alleges that WHRI exercised control over the third-party franchisees "through *one or more* of the following actions," followed by a boilerplate list of alleged areas of control, copying and pasting virtually identical allegations as to every other defendant. These allegations are speculative and conclusory, and therefore are not well pled. *See Perkins v. Am. Spotting Co. of Ohio, Inc*., No. 2:18-CV-54, 2018 WL 7358598, at *3 (S.D. Ohio Dec. 13, 2018) (recognizing that conclusory allegations of "final decision making authority with regard to pay and personnel decisions" could not establish agency); *Gray v. McDonald's USA, LLC*, 874 F. Supp. 2d 743, 752 (W.D. Tenn. 2012) (holding that a manual setting forth "methods that operators could employ in effectively managing their personnel," by itself, did not tend to show control). At most, the Complaint alleges an ordinary franchising relationship, which does not give rise to vicarious liability as to franchisors (let alone a franchisor's corporate affiliate, like WHRI). *See, e.g.*, *Doe 1*, 2020 WL 1872335, at *5 ("[T]he Amended Complaint, at best, makes allegations that are consistent with an ordinary franchise relationship (e.g., brand standards, a contractual right to inspect, a contractual right to terminate for noncompliance, etc.) which do not give rise to vicarious liability against franchisors.").

### III. CONCLUSION

For the foregoing reasons, WHRI respectfully requests that the Court dismiss the claim against WHRI under Rule 12(b)(2) for lack of personal jurisdiction or, in the alternative, transfer venue to the Middle District of Florida under 28 U.S.C. § 1404(a). Should the Court reach the merits, the Complaint should also be dismissed under Rule 12(b)(6) for failure to state a claim.

Respectfully submitted,

*/s/ Michael R. Reed*
Michael R. Reed (0063995) Trial Attorney
Elisé K. Yarnell (0093996)
**HAHN LOESER & PARKS LLP**
65 East State Street, Suite 1400
Columbus, Ohio 43215
Tel.   (614) 221-0240
Fax:   (614) 221-5909
Email: mreed@hahnlaw.com
         eyarnell@hahnlaw.com

David S. Sager (*pro hac vice*)
**DLA Piper LLP (US)**
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
T:  973.520.2550
F:  973.520.2551
david.sager@dlapiper.com

Christopher B. Donovan (pro hac vice)
**DLA Piper LLP (US)**
1000 Louisiana Street, Suite 2800
Houston, Texas 77002
Tel:     (713) 435-8449
Email: christopher.b.donovan@dlapiper.com

*Counsel for Defendant*
*Wyndham Hotels and Resorts, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 1st of May, 2020, the foregoing was served on counsel of record through the Court's e-filing system.

>*/s/ Michael R. Reed*
>Michael R. Reed