**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| C.T., an individual, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 2:19-cv-05384 |
| | ) | |
| v. | ) | |
| | ) | |
| RED ROOF INNS, INC., WYNDHAM | ) | |
| HOTELS & RESORTS, INC., BEST | ) | |
| WESTERN INTERNATIONAL, INC., and | ) | |
| LA QUINTA HOLDINGS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF DEFENDANT LA QUINTA HOLDINGS INC.'S**
**MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

## I.  INTRODUCTION

Plaintiff has failed to state a claim against La Quinta Holdings Inc. ("LQH"), but, even if

she had, she cannot proceed in this Court because there is no basis to find personal jurisdiction

over LQH in Ohio.  LQH is not incorporated and does not maintain a principal place of business

in Ohio, and Plaintiff's allegations have no connection to Ohio.  Plaintiff does not dispute these

facts.  Moreover, Plaintiff is a resident of Florida, and she alleges that she was trafficked at

Florida hotels.  As a result, her Complaint against LQH should be dismissed or, alternatively,

this case should be transferred to the Middle District of Florida under 28 U.S.C. § 1404(a).

## II.  ARGUMENT

### A.  Plaintiff Has Not Stated A Basis For General Personal Jurisdiction.

Plaintiff, who bears the burden of establishing personal jurisdiction, has not alleged a

basis for jurisdiction over LQH in this case.  *See, e.g.*, *CompuServe, Inc. v. Patterson*, 89 F.3d

1257, 1267-68 (6th Cir. 1996).  In response to LQH's motion, Plaintiff does not (because she

cannot) contend that WHRI is subject to specific personal jurisdiction by this Court in this case, and thus has waived that argument. *CHKRS, LLC v. City of Dublin, Ohio*, 2020 WL 1331926, *7 (S.D. Ohio Mar. 23, 2020) (citing cases). Rather, Plaintiff argues that the Court has general personal jurisdiction over LQH because LQH conducts business unrelated to this dispute within Ohio. Plaintiff's argument stands at odds with settled law.

### 1. LQH is not "at home" in Ohio.

Plaintiff misreads the law. In *Daimler AG v. Bauman*, 571 U.S. 117 (2014), the Supreme Court unequivocally rejected the argument that a "substantial, continuous, and systematic course of business" was sufficient to establish general jurisdiction, labeling it "unacceptably grasping." *Id.* at 137. Yet, that is the theory of general jurisdiction on which Plaintiff relies. In *BNSF Railway Co. v. Tyrrell*, 137 S. Ct. 1549 (2017), the Supreme Court again rejected a theory of general jurisdiction premised on a domestic railroad company regularly conducting business in the forum state. In *BNSF*, the plaintiff argued that the railroad company's extensive track and large number of in-state employees made it "at home" in Montana. *Id.* at 1559. In rejecting that argument, the Supreme Court stated that "in-state business . . . does not suffice to permit the assertion of general jurisdiction over claims . . . that are unrelated to any activity occurring in [the state]." *Id.* "[A] corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* (quoting *Daimler*, 134 S. Ct. at 762 n.20).

Plaintiff ignores these holdings and offers no distinguishing facts to support the notion that LQH is "at home" in Ohio. Rather, Plaintiff points to LQH's "high levels of business activity" in Ohio, namely the number of its hotels in this state. Dkt. 40, at 11. That is insufficient. LQH does not have (nor does the Complaint allege) a uniquely high percentage of its branded hotels in Ohio. Under Plaintiff's reasoning, she could have sued LQH in many jurisdictions across the country, a result that is directly contrary to *Daimler* and *BNSF*. LQH is not

incorporated in Ohio and does not have its principal place of business within the state, which Plaintiff concedes. *See* Dkt. 40, at 14 n.17. The alleged volume of LQH's "business activity" is not sufficient grounds to assert general jurisdiction.

### 2. LQH is not subject to process under Ohio's long-arm statute.

Plaintiff's waiver of any argument for specific jurisdiction, coupled with the absence of general jurisdiction, require dismissal. But Plaintiff's personal jurisdiction arguments also fail because Plaintiff cannot satisfy Ohio's long-arm statute. Plaintiff argues that she is not required to satisfy the long-arm statute because her claim arises under federal law, Dkt. 40, at 10, a proposition that is not well supported in the law of this Court or the Sixth Circuit. In particular, cases within this Circuit routinely recognize the rule that, even if the court is exercising federal question jurisdiction, Ohio's long-arm statute must be met in order to exercise jurisdiction over an out-of-state defendant. *E.g.*, *Bird v. Parsons*, 289 F.3d 865 (6th Cir. 2002) ("Where a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists 'if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process."); *Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 583 (S.D. Ohio 2016) (Marbley, J.) (quoting *Bird*); *LML Investments, LLC v. Liegey*, No. 2:12-cv-723, 2012 WL 6023863, *2 (S.D. Ohio Dec. 4, 2012) (following *Bird*); *see also Georgalis v. Facebook, Inc.*, 324 F. Supp. 3d 955 (N.D. Ohio 2018) ("Whether a federal court's jurisdiction arises under 28 U.S.C. §§ 1331 or 1332, Plaintiff must satisfy the forum state's requirements for personal jurisdiction." (citing cases)). In light of that rule, and the fact that Ohio's long-arm statute does not reach to the extent permissible under the Due Process Clause, this Court has previously suggested that Ohio law may not permit general jurisdiction over an out-of-state

defendant under any circumstances. *Ohio Valley Bank Co. v. MetaBank*, 2:19-cv-00191, 2019 WL 4574528, *3 (S.D. Ohio Sept. 20, 2019) (Marbley, J.).

Despite this body of cases, Plaintiff cites unsupported dicta to argue for a contrary rule. *See* Dkt. 40, at 10 (quoting *Capitol Specialty Ins. Corp. v. Splash Dogs, LLC*, 801 F. Supp. 2d 657, 663-64 (S.D. Ohio 2011)). *Capitol Specialty* does not include any authority in support of the assertion that personal jurisdiction over a federal cause of action need not satisfy the forum's long-arm statute. 801 F. Supp. 2d at 663-64. In any event, the sentence on which Plaintiff relies is dicta; *Capitol Specialty* involved the exercise of the court's diversity jurisdiction under Ohio's long-arm statute to establish personal jurisdiction. In this case, Plaintiff did not serve LQH according to Ohio's long-arm statute, and she did not serve LQH within the state of Ohio. LQH is not domiciled in Ohio. Therefore, this Court cannot exercise general personal jurisdiction over LQH. *See Filtrexx Int'l, LLC v. Truelsen*, No. 5:12CV58, 2013 WL 587582, at *8 (N.D. Ohio Feb. 13, 2013) (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011)) (finding no general jurisdiction over an out-of-state defendant who did not consent to jurisdiction and was not physically served in Ohio).

In requesting jurisdictional discovery, Plaintiff fails to state what facts could establish general personal jurisdiction over LQH, and there is no basis for such discovery. *See Indah v. S.E.C.*, 661 F.3d 914, 925 n.7 (6th Cir. 2011) (explaining that the district court did not abuse its discretion by denying a vague request for jurisdictional discovery). Plaintiff also alludes to the possibility of seeking leave to amend the Complaint to add a "civil conspiracy count applicable to all defendants in this action" in an effort to cure the Complaint's jurisdictional shortcomings. *See* Dkt. 40, at 12 n.15. Plaintiff has not done so, and Plaintiff lacks any plausible, good-faith basis for such an allegation.

**B.     Venue Is Improper Because Any Efficiencies in Deciding Legal Issues Together are Outweighed by the Impact on Access to Witnesses**

Because this Court lacks personal jurisdiction over LQH, venue is necessarily improper, and the Court cannot transfer this case to another venue under § 1404(a). *Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993).  If, however, the Court were to conclude that LQH is subject to the jurisdiction of this Court in this case, it should nonetheless transfer venue to the Middle District of Florida, where Plaintiff resides and all of the alleged conduct occurred, for the convenience of the parties and in the interest of justice.  Plaintiff does not reside in Ohio, and none of the likely witnesses are present here.  Nor does Plaintiff dispute that venue would be proper in the Middle District of Florida, where the alleged conduct occurred and where Plaintiff and witnesses are located.  And, while Plaintiff chose this forum (albeit improperly), her choice should receive less weight because she does not reside or work in Ohio.  *Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 850 (S.D. Ohio 2007).  Moreover, Plaintiff does not argue that the Southern District of Ohio is more convenient for her, instead citing to this Court's decision in *Doe S.W. v. Lorain-Elyria Motel, Inc.*, 2020 WL 1244192 (S.D. Ohio Mar. 16, 2020).  In that case, the Court held that a plaintiff who alleged sex trafficking in Ohio hotels could file suit in the Southern District of Ohio rather than the Northern District, where the trafficking allegedly occurred.  Venue was not improper because any Ohio court had specific personal jurisdiction over the defendants under Ohio's long-arm statute.  In this case, on the other hand, the Court lacks personal jurisdiction over LQH and there are *no* witnesses within this District.  The distance between this Court and the location of the alleged conduct will be inconvenient for non-party witnesses and will hamper LQH's ability to subpoena fact witnesses.  This is not simply an issue of traveling to a different courthouse.

5

Plaintiff contends that litigating in this Court will promote judicial efficiency because other plaintiffs have sued other hotel defendants in the Southern District of Ohio under the TVPRA. Plaintiff is wrong. Indeed, Plaintiff does not cite a case supporting the notion that venue is proper simply because other cases involving similar subject matter are pending. The Panel on Multidistrict Litigation already found that common factual questions do not exist among these cases. *See In re Hotel Indus. Sex Trafficking Litig*., MDL 2928, 2020 WL 581882, at *3 (U.S. Jud. Pan. Mult. Lit. Feb. 5, 2020) (denying the motion for transfer to the MDL panel). The fact that a particular judge has experience with a type of claim or particular parties does not lend itself to the notion that traditional factors governing personal jurisdiction and venue do not apply. To the contrary, myriad factors, such as the convenience to witnesses, access to proof, and the venue's interest in the outcome, favor transfer to the Middle District of Florida. *See* Dkt. 23, at 10-11. Undoubtedly, Plaintiff's counsel prefer this District because they have several other cases pending here, but forum shopping should be discouraged rather than rewarded. If this case is not dismissed, venue should be transferred to the Middle District of Florida.

### C. Plaintiff's Complaint Fails to State a Claim.

If the Court were to proceed to the merits, Plaintiff's Complaint should still be dismissed for failure to state a claim because Plaintiff has engaged in impermissible group pleading and has failed to allege facts plausibly giving rise to liability in this case.

### 1. The Complaint is an impermissible shotgun pleading.

"Shotgun" pleadings violate Rule 8(a)(2) of the Federal Rules of Civil Procedure and therefore are subject to dismissal under Rule 12(b)(6). *See Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 392-93 (6th Cir. 2020) (citing *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015)). Plaintiff concedes that the Complaint rests on "collective allegations"

(Dkt. 40, at 14-15), which is a form of impermissible "shotgun" pleading.  *See, e.g.*, *Weiland*, F.3d at 1323; *Joseph v. Bernstein*, 612 F. App'x 551, 553 (11th Cir. 2015) ("[T]he complaint failed to satisfy the requirements of Rule 8 of the Federal Rules of Civil Procedure because it indiscriminately grouped all Defendants together without explaining the factual basis for each of the Defendants' liability.").  If Plaintiff has a good-faith basis for asserting a claim against LQH, federal pleading standards require her to make well-pled factual allegations specific to LQH sufficient to support each element of each claim.  The Complaint, and its reliance on overly-general and collective allegations, clearly falls short of that. Allowing the Complaint to go forward would deprive LQH the notice it is entitled, and would require LQH to defend a claim without knowing the factual bases for it.

### 2.     The Complaint does not state a TVPRA claim.

Plaintiff's cause of action under § 1595(a) requires Plaintiff to plausibly allege that a defendant participated in a venture that violated the criminal provisions of the TVPRA, knowingly benefited from any such participation, and that the defendant knew or should have known of the venture's commission of sex-trafficking crimes. 18 U.S.C. § 1595(a). As explained in LQH's motion, the Complaint lacks any such allegations.

Plaintiff argues that participation in a "venture" under the TVPRA does not require a "common purpose," criticizing LQH's citation to cases construing "enterprise" under RICO. Plaintiff ignores that the definition of a TVPRA "venture" very closely tracks the definition of "enterprise" under RICO, as both require that participants be "associated in fact."  *Compare* 18 U.S.C. § 1591(e)(6) (defining "venture" as "any group of two or more individuals ***associated in fact***, whether or not a legal entity" (emphasis added)), *with* 18 U.S.C. § 1961(4) (defining "enterprise" as "any . . . group of individuals ***associated in fact*** although not a legal entity" (emphasis added)); *Ricchio v. McLean,* 853 F.3d 553, 556 (1st Cir. 2017) (Souter, J.)

7

(recognizing that a "venture" only exists for purposes of Section 1595(a) where "two or more individuals" are "associated in fact"); *accord Bistline v. Parker*, 918 F.3d 849, 873 (10th Cir. 2019).

And where Congress uses similar language in two statutes, as with a TVPRA "venture" and a RICO "enterprise," courts presume that "Congress intended that text to have the same meaning in both statutes." *Smith v. City of Jackson, Miss.,* 544 U.S. 228, 233 (2005); *Northcross v. Bd. of Ed. of Memphis City Sch.,* 412 U.S. 427, 428 (1973).  In the RICO context, the Supreme Court has recognized that, for persons to be "associated in fact," there must be "both interpersonal relationships and a common interest." *Boyle v. United States,* 556 U.S. 938, 946 (2009)); *United States v. Turkette,* 452 U.S. 576, 583 (1981) (explaining that association in fact requires "a group of persons associated together for a common purpose").  Accordingly, in determining whether a defendant has "associated in fact" with a criminal trafficker for purposes of participating in a TVPRA "venture," the inquiry depends in part on whether the alleged participants of the venture associated together for a common purpose and had interpersonal relationships. *See Plaintiff A v. Schair,* 2:11-CV-00145-WCO, 2014 WL 12495639, at *2 (N.D. Ga. Sept. 9, 2014) (finding that the civil remedy provisions in the TVPRA and RICO operate in the same manner); *Boyle*, 556 U.S. at 944 ("That an 'enterprise' must have a purpose is apparent from the meaning of the term in ordinary usage, i.e., a 'venture,' 'undertaking,' or 'project.' The concept of 'association' requires both interpersonal relationships and a common interest." (internal citations omitted)).

A commercial transaction (*e.g.*, the rental of a hotel room) does not give rise to a reasonable inference that the participants in such a transaction shared a common purpose or otherwise "associated in fact."  *See, e.g.*, *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1352 (11th

8

Cir. 2016) (dismissing RICO claims because there were not allegations that the defendant technology and public relations vendors shared a common purpose or otherwise "associated in fact" with Spirit Airlines); *Ellis v. JPMorgan Chase & Co.*, 752 F. App'x 380, 382 (9th Cir. 2018) (dismissing RICO claims and stating that the "mere existence of service contracts . . . is insufficient to establish a common purpose"); *United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 855 (7th Cir. 2013) (holding that "a commercial relationship" is insufficient to show that parties were associated in fact).

At most, the Complaint alleges that the La Quinta®-branded hotel at issue was used by the alleged traffickers as an instrumentality for the traffickers' venture, which is insufficient to establish that LQH "associated in fact" with the traffickers. *See, e.g.*, *Weir v. Cenlar FSB*, 16-CV-8650 (CS), 2018 WL 3443173, at *6 (S.D.N.Y. July 17, 2018) ("[B]eing an 'instrumentality' does not thereby mean one shares a common purpose. Defendants allegedly used the mail in furtherance of the scheme, but that would not make the Postal Service [] a member of the enterprise."); *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 428-29 (S.D.N.Y. 2007) (finding the provision of "indispensable banking services" insufficient and stating that providing services available "to the public at large, does not provide a basis for inferring that [Defendants] shared a common unlawful purpose").

In response, Plaintiff relies heavily on this Court's decisions in *M.A. v. Wyndham* and *H.H. v. G6*, but ignores that those decisions recognized that "participation" in a "venture" requires agreement among the alleged "venture" participants (though LQH maintains that the allegations in *M.A.* and *H.H.* fall short). *See M.A. v. Wyndham Hotels & Resorts, Inc.*, No. 2:19-CV-849, 2019 WL 4929297, *7-8 (S.D. Ohio Oct. 7, 2019) (requiring "a showing of a

continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement"); *H.H. v. G6 Hosp., LLC*, No. 2:19-CV-755, 2019 WL 6682152, *4-5 (S.D. Ohio Dec. 6, 2019) (same). Similarly, a common purpose among the "venture" participants was alleged in *Ricchio*, 853 F.3d at 556, but analogous facts to support a finding of common purpose have not been alleged here. The Complaint therefore fails to allege participation in a sex-trafficking "venture."

Plaintiff also fails to meaningfully rebut authority cited by LQH recognizing that Section 1595(a) requires a "causal relationship" between conduct furthering the venture and the receipt of a benefit. *Geiss v. Weinstein Company Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019). In other words, the benefit must derive directly from the defendant's participation in a sex-trafficking venture. The Complaint at best alleges that LQH benefited generally from the rental of hotel rooms to the general public. That is insufficient.

Finally, Plaintiff's Complaint does not plausibly allege that LQH "knew or should have known" that Plaintiff herself was being trafficked. *See, e.g.*, *Doe 1*, 2020 WL 1872335, at *3 ("[T]he statute targets commercial sex activity that is forced or coerced; it does not address commercial sex activity generally.").[1]  There are no allegations specific to the La Quinta®-branded hotel plausibly suggesting that anyone there knew or should have known of Plaintiff's alleged trafficking.  The Complaint's general, conclusory allegations fall short of what is needed to suggest that LQH "should have known" of Plaintiff's alleged trafficking.  *Compare Lawson v.*

---

[1]  18 U.S.C. § 1591(e)(2) defines "coercion" as "(A) threats of serious harm to or physical restraint against any person; (B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or (C) the abuse or threatened abuse of law or the legal process."

*Rubin*, 2018 WL 2012869, at \*14 (E.D.N.Y. Apr. 29, 2018), *reconsideration denied*, 17-CV-6404 (BMC), 2018 WL 7958928 (E.D.N.Y. June 11, 2018).

### III.     CONCLUSION

For the foregoing reasons, LQH respectfully requests that the Court dismiss the claim against LQH under Rule 12(b)(2) for lack of personal jurisdiction or, in the alternative, transfer venue to the Middle District of Florida under 28 U.S.C. § 1404(a). Should the Court reach the merits, the Complaint should also be dismissed under Rule 12(b)(6) for failure to state a claim.

Respectfully submitted,

*/s/ Michael R. Reed*
Michael R. Reed (0063995) Trial Attorney
Elisé K. Yarnell (0093996)
**HAHN LOESER & PARKS LLP**
65 East State Street, Suite 1400
Columbus, Ohio 43215
Tel.     (614) 221-0240
Fax:     (614) 221-5909
Email: mreed@hahnlaw.com
          eyarnell@hahnlaw.com

David S. Sager (*pro hac vice*)
**DLA Piper LLP (US)**
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
T:  973.520.2550
F:  973.520.2551
david.sager@dlapiper.com

Christopher B. Donovan (pro hac vice)
**DLA Piper LLP (US)**
1000 Louisiana Street, Suite 2800
Houston, Texas 77002
Tel:     (713) 435-8449
Email: christopher.b.donovan@dlapiper.com

*Counsel for Defendant*
*La Quinta Holdings Inc.*

12

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of May 2020, the foregoing was served on counsel of

record through the Court's e-filing system.


*/s/ Michael R. Reed*
Michael R. Reed