**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| C.T., an individual, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:19-cv-05384-ALM-EPD |
| | ) |
| Red Roof Inns, Inc., *et al*., | ) Judge Algenon L. Marbley |
| Defendants. | ) Magistrate Judge Elizabeth P. Deavers |
| | ) |
| _____ | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**<u>DEFENDANT RRI'S MOTION TO DISMISS</u>**

i

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................... 1

II.    STATEMENT OF FACTS ...................................................................................... 3

    A.    Specific Facts Pertaining to RRI ................................................................. 3

    B.    Facts Pertaining to the Sex Trafficking of Plaintiff ................................... 4

III.    LEGAL STANDARD ............................................................................................ 5

    A.    Failure to State a Claim .............................................................................. 5

    B.    Venue ......................................................................................................... 6

IV.    ARGUMENT ......................................................................................................... 7

    A.    The Complaint is Not an Impermissible "Shotgun Pleading"................... 7

    B.    The Complaint is Sufficient Under the TVPRA ...................................... 10

        1.    Defendant RRI Participated in a Sex Trafficking Venture ......................... 11

        2.    Defendant RRI Knowingly Benefited .................................................... 14

        3.    Defendant RRI Knew or Should Have Known That Plaintiff Was Sex Trafficked On its Property ................................................................................................ 15

    C.    VENUE IS PROPER IN THE SOUTHERN DISTRICT OF OHIO ............................ 18

V.    CONCLUSION.................................................................................................... 19

COMES NOW the Plaintiff C.T. (the "Plaintiff"), by and through the undersigned counsel, and respectfully submits this Response in Opposition to Defendant Red Roof Inns, Inc.'s ("RRI") Motion to Dismiss or, in the alternative, Motion to Transfer Venue (ECF No. 51).

## I.    INTRODUCTION

Human sex trafficking is an epidemic. For years, the hospitality industry, including Defendant RRI, has been aware of the rampant culture of sex trafficking that occurs on its branded properties. The issue of sex trafficking within the hotel industry is so pervasive that Justices of the Supreme Court have discussed the tremendous toll human trafficking has taken on our society and the role of the hospitality industry in its facilitation: "The private pain and public costs imposed by human trafficking are beyond contention, and motels provide an obvious haven for those who trade human misery."[1] It is estimated that 63% of sex trafficking is facilitated by hotel room rentals throughout the country.[2] *See* Compl. at ¶ 27.  Moreover, 75% of survivors responding to a Polaris Project survey reported coming into contact with hotels during their exploitation and 94% disclosed that they never received any assistance, concern, or identification from hotel staff.[3] *See id.* at 14–15.

Hotel brands such as RRI pride themselves in increasing their footing in the market by increasing the number of hotel rooms under their brand flag.[4] As the owner of over 600 branded properties, RRI is directly responsible for the brand standards they set for their branded properties. Hotel brands, such as RRI, obtain knowledge through national and local anti-

---

[1]     *City of Los Angeles, Calif. v. Patel*, 576 U.S. 409 (2015). (Scalia, J., dissenting, joined by Roberts, C.J. and Thomas, J.).

[2]     Michele Sarkisian, *Adopting the Code: Human Trafficking and the Hospitality Industry*, CORNELL HOSPITALITY REPORT, 15(15), 3-10 (2015).

[3]     *Recommendations for Hotels and Motels*, THE POLARIS PROJECT, https://polarisproject.org/hotels-motelsrecommendations (last visited June 19, 2019).

[4]     *See* https://www.statista.com/statistics/197869/us-hotel-companies-by-number-of-properties-worldwide/ (last viewed Apr. 13, 2020) (RRI owns approximately 637 properties worldwide).

trafficking initiatives[5] and actively participate and acknowledge their duties and responsibilities to prevent human trafficking.[6] RRI has a legal duty under 18 U.S.C. § 1595, the Trafficking Victims Protection Reauthorization Act ("TVPRA") not to benefit in any way from human trafficking. Despite this duty, RRI has failed to mandate guidelines and training it knew was necessary to prevent human trafficking in its hotels.[7] *See* Compl. at ¶¶ 29–33, 51, 66(h).

Despite over a decade of widespread knowledge of human trafficking occurring across the hotel industry, including on their respective branded properties worldwide, RRI has continuously failed to protect victims of human trafficking at its hotel properties by, *inter alia*: (1) failing to mandate guidelines for training employees/staff to prevent human trafficking; (2) failing to implement employee/staff training to prevent human trafficking; (3) failing to conduct audits to confirm that training has been implemented; and (4) and failing to implement cybersecurity measures and ignoring data that demonstrates cybercrimes run rampant throughout their branded properties, while using this same data for their benefit. Had Defendant RRI acted as a reasonable company aware of the sex trafficking epidemic plaguing the hotel industry and the measures that should be taken to prevent it, Defendant RRI would have developed, implemented, and monitored human trafficking and safety policies and procedures throughout its hotel properties. RRI is both directly and indirectly liable for the systemic failures across its hotel brands resulting in the horrific trauma sustained by Plaintiff.

As set forth below, Plaintiff's complaint pleads facts sufficient to state a claim for relief against RRI under a beneficiary theory of liability as provided by the TVPRA. RRI's motion to

---

[5]      *See* 22 U.S.C. § 7104 (federal grants available for companies who vow to monitor and combat trafficking and help victims of sexual exploitation since 2003); *see also* Compl. at ¶¶ 40, 41,  44, 45, 52.

[6]      *See, e.g.,* https://www.redroof.com/why-red-roof-inn/ (Red Roof Inns, Inc. president reviews online customer reviews daily).

[7]      *See also*
https://static1.squarespace.com/static/594970e91b631b3571be12e2/t/5cd329e8a4222f20baf5378b/1557342696892/
ECPAT-USA_AntiTraffickingHotelChecklist.pdf (last visited Apr. 17, 2020).

dismiss is simply an attempt to deflect responsibility onto everyone but itself. *See* RRI's Mot. to Dismiss, ECF No. 51 at 2. Plaintiff C.T. brings this claim to speak up about and speak out against the hotel brands such as RRI that turned a blind eye to sex trafficking occurring on its premises. RRI's efforts to prematurely silence the Plaintiff through motion practice should be denied.

## II. STATEMENT OF FACTS

### A. Specific Facts Pertaining to RRI

Red Roof Inns, Inc. ("RRI") is a large hotel brand with more than 600 branded properties worldwide.[8] *See* Compl. at ¶ 13. RRI is an Ohio corporation with its principal place of business in New Albany, Ohio. *Id*. Plaintiff alleges RRI is independently and directly responsible for training and transferring knowledge and requirements to its hotel properties regarding human trafficking. *See id.* at ¶¶ 13(g), 66(e), 66(h). Additionally, RRI exercises an ongoing and systemic right of control over Red Roof-branded hotels, including the means and methods of how Red Roof hotels conduct daily business. *See id.* at ¶ 66(f).

RRI and the Red Roof Inn property are single, joint employers with a high degree of interrelated, intermingled, and unified operations at the brand properties where the Plaintiff was trafficked for sex. *See id.* at ¶¶ 13(c)–(f). Both directly and indirectly through this relationship, including through internet marketing, room bookings, room rentals, pricing of rental fees and/or Red Roof name branding, RRI benefited from its facilitation of, or participation in, a venture which it knew or should have known involved sex trafficking. *See id.* at ¶¶ 13(i), (j), 86, 88–90, 92. RRI breached its statutory duty under 18 U.S.C. § 1595 by facilitating the harboring and

---

[8]    *See supra* fn.5.

providing of the Plaintiff for the purposes of commercial sex induced by force, fraud, or coercion by its acts, omissions, and commissions. *See id*. at ¶ 96.

RRI has demonstrated actual and/or constructive knowledge of the rampant culture of sex trafficking at its branded properties through publicly-available articles and online reviews of its properties. *See id.* at ¶ 66(i). Specifically, RRI knew or should have known that the Plaintiff was being trafficked and that it was knowingly benefiting from Plaintiff's exploitation because of several red flags, outlined below in § II.E. Despite such red flags, RRI continuously provided lodging to C.T.'s traffickers when they knew or should have known that her traffickers were using their hotel rooms to imprison C.T., physically assault her, and sexually exploit her. *See id.* at ¶ 86.

By virtue of its structure, RRI benefited from room rentals to the Plaintiff's traffickers for their use in a sex trafficking venture. *See id.* at ¶ 13(j). RRI enjoyed the steady stream of income that sex traffickers brought to their hotel brands, including Red Roof Inn. *See id.* at ¶ 89. RRI gained financial benefit and continued promotion of its brands by renting rooms that were used for the purpose of trafficking C.T. *Id.* at ¶¶ 66, 85. RRI knew or should have known that sex trafficking regularly occurred at their respective branded hotels. *See id.* at ¶ 66(i).  Still, RRI leased rooms to C.T.'s traffickers, when they knew or should have known that her traffickers were using their rooms to imprison C.T. and subject her to repeated sex trafficking. *See id.* at ¶¶ 66, 81–85.

### B.     Facts Pertaining to the Sex Trafficking of Plaintiff

The Plaintiff is a survivor of sex trafficking. *See* Compl. at ¶ 4. She was repeatedly trafficked and forced into commercial sex acts with multiple men a day at RRI's hotel. *See id.* at ¶¶ 4, 68, 71. Plaintiff was trafficked at RRI's hotel through force, fraud, and coercion, constantly

monitored by her traffickers to ensure she could not escape. *See id.* at ¶¶ 73–74. While she was trafficked at RRI's branded hotel, she encountered the same hotel staff, who would have observed the known signs of human trafficking, such as the avoidance of eye contact, bruising all over her body, and malnourishment. *See id.* at ¶¶ 74, 76, 85. RRI would also have noticed indicators of commercial sex activity, such as bottles of lubricants, boxes of condoms, used condoms in the trash, excessive requests for towels and linens, and cash payments for rooms. *See id.* at ¶ 76. There was always constant and voluminous foot traffic to the rooms, and each buyer entering the branded property was a non-paying guest who left shortly after he arrived. *See id.* at ¶ 74. Despite desperate pleas and screams for help after being beaten at RRI's property, she was ignored by RRI's hotel staff and nothing was done to prevent her ongoing torture. *See id.* at ¶ 75.

RRI did not save the Plaintiff. The police had to do that. When they rescued her, she was obviously malnourished and weighed less than 100 pounds. *See id.* at ¶ 76.

## III. LEGAL STANDARD

### A. Failure to State a Claim

To survive a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quote marks omitted).

In judging this motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Where "more than one

inference may be drawn from an allegation," the conflict is resolved in the plaintiff's favor. *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 962 (S.D. Ohio 2019) (Marbley, J.) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). And a court can only dismiss a complaint for failure to state a claim if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*.

### B.    Venue

Under the general venue statute, venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located," "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated," or, "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). A court may exercise its discretion to grant a motion to transfer venue under 28 U.S.C. § 1404(a) "if the transfer would further the convenience of the parties and the witnesses and be in the interest of justice." *MJR Int'l, Inc. v. Am. Arbitration Ass'n*, No. 2:06-CV-0937, 2007 WL 2781669, at *2 (S.D. Ohio Sept. 24, 2007). On a motion to transfer, "the plaintiff's choice of a forum is entitled to considerable weight, and, consequently, the party moving for a change of venue must demonstrate that the interests served by 28 U.S.C. § 1404(a) clearly favor a change of venue. *Id*. at *3 (citing *Sun Oil Co. v. Lederle,* 199 F.2d 423 (6th Cir.1952)).

## IV.    ARGUMENT

### A.    The Complaint is Not an Impermissible "Shotgun Pleading"

As the Supreme Court has made clear, "under the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory" to survive a motion to dismiss. *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). Taking the Plaintiff's allegations as true and drawing reasonable inferences in her favor, the Complaint states a claim for financial beneficiary liability under the Trafficking Victims Protection Act.  The Complaint's collective allegations are not an impermissible "shotgun pleading," because the Complaint makes specific allegations to put Defendant RRI on notice of how it is alleged to have violated the TVPRA by citing particular bases of knowledge and timelines—well beyond the basic requirements of Rule 8. The Complaint shows how RRI knew or should have known about sex trafficking occurring across its branded properties since at least 2008 (when the TVPRA was amended to hold businesses accountable for their actions and/or omissions). *See* Compl. at ¶ 66(i) (describing publicly-available articles and reviews describing prostitution and sex trafficking occurring on its branded properties). These allegations go well beyond "group pleadings" or any other notice concerns which Fed. R. Civ. P. 8 may protect against. *See also M.L. v. Craigslist*, No. 19-cv-06153, Dkt. 62 at 8-9 (W.D. Wash. Apr. 17, 2020) (Fricke, M.J.) (where the plaintiff's complaint made allegations against the defendants collectively and also made specific allegations against the individual defendants, the court found that the complaint was not intended to cause confusion and provided sufficient allegations to give the defendant adequate notice of the allegations against it).

RRI alleges that Plaintiff's claims are based upon shotgun pleadings and do not provide the defendants with fair notice of the allegations made against them. RRI states that a "complaint

is an impermissible 'shotgun' pleading if it groups multiple defendants together and makes allegations against them collectively 'without specifying which of the defendants are responsible for which acts or omissions.'" Def. RRI's Mot. to Dismiss, ECF No. 51 at 3-4 (quoting *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015)).

RRI hangs a lot of its argument on *Lee*, where the Sixth Circuit dismissed a complaint for "shotgun pleading."[9] *Lee v. Ohio Educ. Ass'n*, 951 F.3d at 392–93 (internal citations omitted). But that just goes to show how unfounded RRI's argument is, because the complaint in *Lee* alleged seven state law causes of action "contained within a single sentence," not collective factual allegations against multiple defendants. In evaluating the *Lee* complaint, the court wrote:

> This practice violated the Federal Rules of Civil Procedure in two ways. First, plaintiff failed to connect specific facts or events with the various causes of action she asserted. This violated Rule 8(a)(2)'s requirement that she provide the defendants adequate notice of the claims against them and the grounds upon which each claim rests. She also failed to separate each of her causes of action or claims for relief into separate counts. This type of "shotgun pleading" violates Rule 10(b). See Weiland, 792 F.3d at 1323 n.13 (collecting cases); Cincinnati Life Ins. Co., 722 F.3d at 947 (holding that one count of complaint, which raised five causes of action, was impermissible "kitchen sink" pleading).

*Id.* at 392–93 (internal citations omitted).

Thus, all the Sixth Circuit (and Rule 8) requires is that defendants receive "adequate notice" of the claims against them, through a complaint that separates legal claims into separate counts and makes it clear which facts go with which claims. *Lee* does not follow the Eleventh Circuit in declaring that allegations against a group of defendants collectively is impermissible. *Compare Lee*, 951 F.3d 386, 392–93 and *Weiland*, 792 F.3d at 1323 (reversing complaint dismissal where counts re-alleged all the preceding paragraphs) ("Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying

---

[9]    *See* Def. RRI's Mot. to Dismiss, ECF No. 51 at 3.

which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.").

Even if *Weiland* were binding , which it isn't, it does not stand for the proposition that the Defendant claims. While *Weiland* cited some cases dismissing collective allegations, it also cited a case where collective allegations against defendants were *allowed* to move forward: "**The fact that defendants are accused collectively does not render the complaint deficient. The complaint can be fairly read to aver that all defendants are responsible for the alleged conduct.**" *Weiland*, 792 F.3d at 1323 n.14 (quoting *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir.2000)) (emphasis added). Weiland reversed the district court's dismissal, writing:

> More importantly, this is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count. This may explain why the defendants did not move for a more definite statement under Federal Rule of Civil Procedure 12(e) or otherwise assert that they were having difficulty knowing what they were alleged to have done and why they were liable for doing it.

792 F.3d at 1324.

So too here: the Plaintiff here is "aver[ring] that all defendants are responsible for the alleged conduct." Moreover, no Defendants have moved for a more definite statement under Fed. R. Civ. P. 12(e), nor do they claim that some aspect of the pleading is confusing.  Unlike *Lee*, the Plaintiff in this case has alleged exactly **one count** against the Defendants, a violation of 18 U.S.C. § 1595(a). Compl. at ¶¶ 94–98. Necessarily, RRI cannot possibly be confused as to which alleged facts match up with which legal claim, because all the facts are alleged to support the same legal claim. Each Defendants' conduct, which is distinct, is outlined in their respective paragraphs.[10]

---

[10]  *See* Compl. at  ¶¶ 13, 66 (addressing RRI's conduct giving rise to liability).

That the same facts are alleged against all Defendants reflects the systematic nature of sex trafficking, including as to those who are complicit in it. The Plaintiff alleges that the Defendants all failed her in precisely the same way. *See* Compl. at ¶¶ 81–93. Plaintiff does not plead collectively to obscure which defendant is responsible for which acts, but to underscore that they are *all* responsible for the same acts and their collective failure led to her repeated sex trafficking. Thus, since the Complaint alleges the same facts against all Defendants to support a single sex trafficking count, RRI has "adequate notice" of the claims against it, sufficient to satisfy the Rules.

### B.     The Complaint is Sufficient Under the TVPRA

As this Court has held in a reported case, beneficiary liability for sex trafficking under 18 U.S.C. § 1595(a) can be a standalone claim. *M.A. v. Wyndham*, 425 F. Supp. 3d at 964. To state a claim for beneficiary liability, plaintiffs must allege facts showing that (1) the Defendants "knowingly benefit[ted], financially or by receiving anything of value," (2) "from participating in a venture," (3) that the Defendants "knew or should have known has engaged in" sex trafficking. *H.H. v. G6 Hosp., LLC*, No. 2:19-CV-755, 2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019) (citing 18 U.S.C. § 1595) (internal quotation marks omitted).

At the outset, it is important to note that RRI's arguments are predicated on an inaccurate recitation of the elements of a civil claim under Section 1595 of the TVPRA. RRI conflates the elements of a criminal case under Section 1591 with the elements of a civil claim under Section 1595 of the TVPRA. This is wrong, because "[i]t is possible for a defendant to be civilly liable without having violated any of the criminal portions of the TVPRA because the statute permits recover under a civil standard even in the absence of proof of intentional conduct." *Ricchio v. Bijal, Inc.*, 424 F. Supp. 3d 182, 194 (D. Mass. 2019). Moreover, each of RRI's contentions is

10

without merit and predicated on a general misunderstanding and mischaracterization of the law and of the facts alleged by Plaintiff.

### 1. Defendant RRI Participated in a Sex Trafficking Venture

A financial beneficiary claim, as alleged in this case, differs from the perpetrator claims in important ways. In the 2008 amendment to the TVPRA, Congress determined that civil liability would attach to a financial beneficiary if that person or entity *knew or should have known* the venture in which it was engaged involved a violation of the TVPRA. A financial beneficiary claim, therefore, need not allege knowing assistance or actual knowledge that the venture in which it participated violated the TVPRA, only that the entity should have known the venture from which it benefitted violated the TVPRA. By providing an explicit constructive knowledge standard, Congress determined the definition of "participation in a venture" from § 1591 (e)(6) **did not apply** to financial beneficiary claims under § 1595.

In order to state a financial beneficiary claim, the Plaintiff does not have to show that RRI participated in any sex trafficking act itself. Despite RRI's efforts to conflate the Plaintiff's actual factual allegations pursuant to her financial beneficiary liability cause of action with a perpetrator liability cause of action, the Complaint clearly and sufficiently states a claim for relief under § 1595 of the TVPRA, as set forth below. *Ricchio*, 424 F. Supp. 3d at 194 ("It is possible for a defendant to be civilly liable without having violated any of the criminal portions of the TVPRA because the statute permits recovery under a civil standard even in the absence of proof of intentional conduct."); *A.B. v. Marriott Int'l Inc.*, No. 19-5770, 2020 WL 1939678, at *20 (E.D. Pa. Apr. 22, 2020) ("We will not impose a 'knowingly' state of mind requirement to section 1595 and ignore language Congress specifically included allowing a civil action against facilitators who should have known about a sex trafficking venture.").

RRI cites several Racketeer Influenced and Corrupt Organizations Act ("RICO") cases to support the proposition that the TVPRA requires some sort of "association in fact," but that misses the mark. The problem here is that RRI demands compliance with a nonexistent requirement. The RICO statute may have a common purpose element, but Section 1595 does not. *See M.A. v. Wyndham Hotels*, 425 F. Supp. 3d at 964–72.

Similarly, criminal cases under the TVPRA such as *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) and *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018),[11] cited by RRI are also inapposite to civil financial beneficiary claims. In *Afyare* the Sixth Circuit considered only the type of participation which Congress *criminalized* under § 1591(a)(2). As discussed *supra*, a financial beneficiary claim under § 1595 **does not require** actual knowing participation in the sex trafficking venture.

The plain language of § 1595 irrefutably demonstrates that the definition of "participation in a venture" from § 1591(e)(4) **cannot** apply to "participation in a venture" as used in § 1595(a). If the definition from § 1591 did apply, civil liability would be limited only against a criminal perpetrator and most of § 1595(a)—everything in parentheses[12]—would be rendered meaningless. *See also United States v. Ballinger,* 395 F.3d 1218, 1236 (11th Cir. 2005) ("statutes should be construed so that 'no clause, sentence, or word shall be superfluous, void, or insignificant.'") (quoting *United States v. Aldrich*, 566 F.3d 976, 978–79 (11th Cir. 2009). The

---

[11]     *Noble* is inapposite because the Plaintiff in *Noble* did not allege that any defendant in that case "should have known" anything. Noble brought only perpetrator claims against the defendants in that case and did not bring a single financial beneficiary claim under § 1595. Therefore, *Noble* does not apply here. *See, e.g., Barrientos v. CoreCivic, Inc.*, 332 F. Supp. 3d 1305, 1312 (M.D. Ga. 2018) ("...Plaintiffs' Complaint arguably alleges a cause of action against CoreCivic as both a perpetrator and as a financial beneficiary."). Because the plaintiff's claims in *Noble* alleged only that the defendants were the actual perpetrators of violations of § 1591, the plaintiff had to prove those violations against the defendants.

[12]     An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (*or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter*) in an appropriate district court of the United States and may recover damages and reasonable attorneys' fees.  Trafficking Victim Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1595(a) (emphasis added).

words "should have known" in § 1595(a) were not included by Congress for no purpose. Several courts have found failure to implement policies sufficient to combat a known problem in one's operations can rise to the level of willful blindness or negligence.[13] Similarly, the decisions granting motions to dismiss in the series of cases from the Northern District of Georgia, each issued by the same judge, rely on this same **misapplication** of precedent interpreting section 1591, as explained thoroughly and recently in *A.B. v. Marriot Int'l, Inc.*, ___ F. Supp. 3d ____, No. 19-5770, 2020 WL 1939678, at *8–9 (E.D. Pa. Apr. 22, 2020).

RRI's participation in a venture is properly alleged as follows: RRI had actual and/or constructive knowledge of the trafficking occurring in almost epidemic fashion throughout its hotel properties, including the hotel where Plaintiff was trafficked;[14] despite such knowledge, RRI failed to mandate training or implement anti-trafficking policies on its branded properties which would have prevented Plaintiff's trafficking;[15] and as a result, RRI facilitated and participated in the sex trafficking of C.T. through constant room rentals to her trafficker.[16]

---

[13] *See Brown v. Corr. Corp. of Am.*, 603 F. Supp. 2d 73, 81 (D.D.C. Mar. 26, 2009) (finding that the complaint stated sufficient allegations under § 1983, based on willful blindness, where defendants knew that a supervisor at a correctional facility raped his employee, sexual harassment at the facility "was not an isolated incident," and defendants failed "to implement and effectuate appropriate policies… to remedy and/or prevent the discriminatory conduct, sexual abuse and sexual harassment and rape."); *Trollinger v. Tyson Foods, Inc.*, 2007 WL 1574275, at *12 (E.D. Tenn. May 29, 2007) (finding that a "willful blindness policy" could be sufficient to show a RICO violation).

[14] *See* Compl. at ¶¶ 66i (RRI has demonstrated actual and/or constructive knowledge of the rampant culture of sex trafficking that occurs on its branded properties for years. Such knowledge facilitated the sex trafficking of Plaintiff at the Red Roof Inn hotel); ¶¶ 67-77 (Plaintiff displayed several red flags that should have drew the attention of hotel staff which she encountered on a regular basis during the time she was trafficked for sex at RRI's branded properties).

[15] *See* Compl. at ¶¶ 13g, 66d, 66h, (RRI had a duty to direct its branded hotels to implement anti-trafficking policies and procedures, but failed to take the necessary action to prevent sex trafficking by failing to implement and enforce any of its own policies or procedures to protect Plaintiff C.T. and other victims like her from being sex trafficked).

[16] *See* Compl. at ¶¶ 13j, 81, 84 (alleging RRI continued to lease rooms to C.T.'s traffickers even after knowledge that the Plaintiff was being held under duress and received a benefit from such room rentals and other incidentals recognized by renting rooms in which the Plaintiff was trafficked).

### 2.    Defendant RRI Knowingly Benefited

RRI wrongly looks to *Geiss v. The Weinstein Company Holdings, LLC, et al*., Case No. 1:17-cv-09554-AKH, 2019 WL 1746009 (S.D.N.Y. Apr. 18, 2019) to avoid liability in this case and asserts that 18 U.S.C. § 1595(a) requires "a causal relationship between affirmative conduct furthering the sex trafficking venture and receipt of a benefit." *Geiss*, 2019 WL 1746009. This position is not supported by statute and other cases have not required such a specific definition of "benefit." RRI claims that "a benefit is insufficient unless it derives directly from, and is knowingly received in exchange for participating in, a sex-trafficking venture." In *Gilbert v. United States Olympic Committee,* the District Court of Colorado found that § 1595 liability premised on § 1589(b) (the forced labor provision of the statute) **did not** "require[] the party to benefit from the [forced] labor or services for liability to attach." *Gilbert v. United States Olympic Committee,* No. 18-cv-00981-CMA-MEH, 2019 WL 4727636, at *16 (D. Colo. Sept. 27, 2019)[1] (citation omitted). Further, the *Gilbert* court found that the defendant had received a benefit through "collecting money through sponsorships, licensing, grants, publicity, [and] for medals achieved at competitions."

Section 1595 simply requires that RRI knowingly benefit financially or receive anything of value, not that it be compensated by the trafficker. *H.H. v. G6 Hosp., LLC*, 2019 WL 6682152, at *4 (S.D. Ohio Dec. 6, 2019). Plaintiff alleges RRI directly benefited from facilitating the trafficking of the Plaintiff on each occasion they received payment for rooms that she was being kept in at RRI's hotel properties. *See* ECF No. 51 at ¶¶ 2, 13(j), 81, 84–85. Plaintiff also alleges that Defendant's employees continued to rent rooms where traffickers could sexually exploit Plaintiff after knowledge that sexual activities were happening. *See id.* at ¶¶ 2, 81, 84-85. RRI could have and should have known it was benefiting financially from fees generated from rooms

rented and used to facilitate the sex trafficking of C.T. *See M.A.*, 2019 WL 4929297, at \*6–7 (finding that the hotel defendants' room rentals to the plaintiff's trafficker constituted a financial benefit from a relationship with the trafficker); *Ricchio v. McLean*, 853 F.3d 553, 557 (1st Cir. 2017) (finding that the defendants knowingly benefited under § 1595 by way of payment for a motel room); *Gilbert v. United States Olympic Committee*, No. 18-cv-00981-CMA-MEH, 2019 WL 4727636, at \*16 (D. Colo. Sept. 27, 2019) (the court found that the defendant received a benefit under § 1595 through collecting money through sponsorships, licensing, grants, publicity, and for medals achieved at competitions); *Ricchio v. Bijal*, 386 F. Supp. 3d 126, 131 (D. Mass. 2019) (where the defendants had a financial stake in the success of the motel, the court found that even the rental of a room for a short period could constitute a "benefit" within the meaning of the [TVPRA]). The Plaintiff has pled exactly what is required to show RRI received financial benefits from the sex trafficking of C.T.

### 3. Defendant RRI Knew or Should Have Known That Plaintiff Was Sex Trafficked On its Property

Here, like *M.A.*, this Court should find that allegations are sufficient to survive a Rule 12(b)(6) motion to dismiss as Plaintiff alleges multiple incidents of sex trafficking occurring at RRI properties. ECF No. 51 at ¶ 66(i). RRI is in the business of renting hotel rooms, and in this case rented them to a sex trafficker who could comfortably advertise the sale of Plaintiff for sex in those rooms and so that johns would feel secure in the knowledge that they could frequent RRI's hotel properties to purchase sex without any repercussions. RRI knows sex trafficking occurs in its hotel rooms and that it directly participated in the sex trafficking venture by harboring it. *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766–67 (2011) (applying the established criminal law doctrine in the civil context in a patent case and stating, "It is also said that persons who know enough to blind themselves to direct proof of critical

15

facts in effect have actual knowledge of those facts.").

*Ratha v. Phatthana Seafood Co., Ltd.,* cited by RRI, is also distinguishable because the court (1) heard the case at the motion for summary judgment phase; and (2) the evidence actually demonstrated that the defendants "actively sought to source products from companies that did not exploit their workers, and, in fact, returned products from plants where exploitation was alleged." *Ratha v. Phatthana Seafood Co.*, Ltd., No. CV 16-4271-JFW (ASX), 2017 WL 8293174, at *5–6 (C.D. Cal. Dec. 21, 2017). The company had also taken active steps to prevent human trafficking in its supply chain, even sending products back when alleged trafficking connected with them became known. *Id.* at *5. They never sold the product or received a benefit. *Id.*

In contrast, this case is not evaluating the Plaintiff's evidence, but her complaint's sufficiency. Here, RRI failed to take any measures or follow any guidelines meant to protect Plaintiff, and in fact rebukes any responsibility whatsoever. Additionally, and as will be discussed further below, C.T.'s constructive knowledge claim does not rest on alleging hotels' general knowledge that sex trafficking occurs in hotels, but on alleging signs—visible to hotel staff and well known among the hotel industry and data available to Defendants—that she was being trafficked, and on alleging sex trafficking incidents specific to branded hotels that RRI should have known about. *See* Compl. at ¶¶ 29, 63.

More to the point, this Court has noted what is sufficient to plead negligence:

Here, H.H. has alleged that Defendants were on notice about the prevalence of sex trafficking generally at their hotels and failed to take adequate steps to train staff in order to prevent its occurrence. She also alleges facts specific to her own sex trafficking, including a number of signs she alleges should have alerted staff to her situation, and specific incidents in which hotel staff observed her abuse and failed to report it. These allegations are sufficient to meet the negligence standard in § 1595 for purposes of surviving a 12(b)(6) Motion to Dismiss.

16

*H.H. v. G6 Hosp.*, 2019 WL 6682152, at *3. *See also M.A. v. Wyndham Hotels*, 425 F. Supp. 3d at 966–68 (same).

Similar to the plaintiff in *H.H.*, the Plaintiff alleges far more than a conclusory statement or general knowledge about sex trafficking to support the allegation that RRI knew or should have known she was being trafficked; she alleges that the Red Roof Inn hotel staff witnessed, over a period of years:

- The trafficker escorting her to check in, and then not proceeding to the room;
- Constant foot traffic, from non-paying guests, to her room;
- Commercial sexual activity indicators in the rooms, including "bottles of lubricants, boxes of condoms, used condoms in the trash, excessive requests for towels and linens, cash payments";
- Noticeable physical injuries, including bruising;
- Physical deterioration to the point that she—a woman in her early twenties—was under 100 pounds; and
- That the Defendants monitored and controlled internet access and had direct and indirect knowledge that sex ads were being posted from its hotels.

Compl. at ¶¶ 70-77. RRI's motion does not discuss these facts or explain why they are insufficient to state a claim under a "should have known" standard.

Moveover, C.T. has alleged that RRI knew or should have known that sex trafficking was occurring on its properties based on news articles and reviews stating exactly that. Compl. at ¶ 66(i). Finally, C.T. alleges that hotels are the most common site for sex trafficking, even more than commercial brothels, Compl. at ¶¶ 24–27, which, taken together with the knowledge imputed to RRI above, is sufficient to allege that RRI, at the very least, should have known that C.T. was being trafficked at its branded property. Therefore, C.T. has adequately pled the constructive knowledge element of her § 1595 claim.

### C.    VENUE IS PROPER IN THE SOUTHERN DISTRICT OF OHIO

RRI also seeks to transfer this action to the Middle District of Florida. The Court should reject RRI's invitation to send this case 1,000 miles away, when it could be heard just a few miles from RRI's backyard in New Albany.

Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located[.]" 28 U.S.C. § 1391(b)(1). A corporate defendant resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question[.]" 28 U.S.C. § 1391(c)(2).

"District courts have wide discretion in deciding motions to transfer." *Prime Time Mktg. Mgmt., Inc. v. DirectBuy, Inc.*, No. 3:07-CV-387, 2008 WL 11452553, at *1 (S.D. Ohio Jan. 23, 2008) (citing *Van Dusen v. Barrack*, 376 U.S. 612 (1964)). When deciding a motion to transfer, courts consider the interests of justice, including judicial efficiency and the presence of related litigation. *See*, *e.g.*, *JetBlue Airways Corp. v. Helferich Patent Licensing*, 960 F. Supp. 2d 383 (E.D.N.Y. 2013); *Black and Decker Corp. v. Vermont Am. Corp.*, 915 F. Supp. 933 (N.D. Ill. 1995); *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256 (W.D. Wash. 2005).

RRI is subject to general personal jurisdiction in Ohio because it is an Ohio corporation with its principal place of business in New Albany, Ohio. Thus, because RRI resides in this district, venue is proper under §1391(b)(1). This Court has previously found venue to be proper as to Best Western International, Inc. in a related case because Best Western was subject to personal jurisdiction in this district due to its contacts. *Doe S.W. v. Lorain-Elyria Motel, Inc.*, No. 2:19-CV-1194, 2020 WL 1244192, at *3 (S.D. Ohio Mar. 16, 2020). This Court found "that venue is proper in the Southern District because Best Western's contacts would satisfy a personal jurisdiction analysis in this District." *Id*. Just like Best Western, RRI "ignores § 1391(b)(1),

which establishes that venue is also proper in 'a judicial district in which any defendant resides,' and § 1391(d), which establishes residency of corporate defendants is 'in any judicial district in which such defendant is subject to the court's personal jurisdiction.'" *Id.* (citing 28 U.S.C. 1391(b)).

In this case, the interests of justice factor—particularly as to efficiency and consistent results—weighs in favor of venue here, in the Southern District of Ohio. Several other sex trafficking cases against hotels are pending in front of this Court, and RRI is a defendant in two of them, including this case.[17] Moreover, this Court has acquired expertise overseeing this similar litigation, and judicial economy would be served by litigating this case here as well. Finally, it is manifestly obvious that litigating this case here, in RRI's home district, is not inconvenient to RRI. Accordingly, this Court should decline to dismiss for lack of venue or transfer venue, in the interests of justice.

## V.    CONCLUSION

Plaintiff thoroughly and robustly states the factual basis for her claim and otherwise properly states her claim for relief pursuant to § 1595 of the TVPRA. Accordingly, RRI's motion should be completely denied. To the extent the Court has any reservations about any aspect of the Plaintiff's Complaint and is inclined to grant some or all of the Defendant's requested relief, Plaintiff respectfully requests that the Court grant any dismissals without prejudice and with leave to amend.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court deny Defendant RRI's request for dismissal or to transfer venue and enter an Order denying RRI's Motion to Dismiss, or in the alternative, Motion to Transfer Venue.

---

[17]    Defendant RRI is a named defendant in *A.C. v. Red Roof Inns, Inc.*, No. 19-cv-4965-ALM-EPD.

Dated this 12th day of June 2020.

Respectfully submitted,
/s/ *Steven C. Babin*
Steven C. Babin, Jr.
Babin Law, LLC
1320 Dublin Road, #100
Columbus, Ohio 43215
T: (614) 384-7035
E: steven.babin@babinlaws.com

/s/ *Kathryn L. Avila*
Kimberly L. Adams, (*pro hac vice*)
Fla. Bar. No. 0014479
Kathryn L. Avila (*pro hac vice*)
Fla. Bar No. 1019574
Levin, Papantonio, Thomas,
Mitchell, Rafferty & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, Florida 32502
T: 850-435-7000
E: kadams@levinlaw.com /
kavila@levinlaw.com

**Attorneys for Plaintiff C.T.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 12, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all counsel of record.

Dated this 12th day of June, 2020.

Christopher B. Donovan (*pro hac vice*)
DLA PIPER LLP
1000 Louisiana Street, Suite 2800
Houston, Texas 77002
T: 713-425-8449
F: 713-425-8401
E: christopher.b.donovan@dlapiper.com
*Counsel for Defendant Wyndham Hotels & Resorts, Inc.*

David S. Sager (*pro hac vice*)
DLA Piper LLP (US)
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey  07078-2704
T: 973-520-2550
F: 973-520-2551
E:  david.sager@us.dlapiper.com
*Counsel for Defendant Wyndham Hotels & Resorts, Inc.*

Michael R. Reed
Elise K. Yarnell
HAHN LOESER PARKS LLP
65 East State Street, Suite 1400
Columbus, Ohio 43215
T: 614-233-5165
F: 614-221-5909
E: mreed@hahnlaw.com/ eyarnell@hahnlaw.com
 *Counsel for Defendants Wyndham Hotels & Resorts, Inc. & La Quinta Holdings, Inc.*

Judd R Uhl
Lewis Brisbois Bisgaard & Smith LLP
250 East Fifth Street, Suite 2000
Cincinnati, OH 45202
T: (513) 808-9911
F: (513) 808-9912
E: judd.uhl@lewisbrisbois.com
*Counsel for Defendant Best Western International, Inc.*

Karen L Campbell
Lewis Brisbois Bisgaard & Smith LLP
77 Water Street, Suite 2100
New York, NY 10005
T: 212-232-1391
F: 212-232-1399
E: karen.campbell@lewisbrisbois.com
*Counsel for Defendant Best Western International, Inc.*

Katherine L. Kennedy
Lewis, Brisbois, Bisgaard & Smith LLP
250 E. 5th Street, Suite 2000
Cincinnati, Ohio 45202
T: 513-808-9914
F: 513-808-9912
E: kate.kennedy@lewisbrisbois.com
*Counsel for Defendant Red Roof Inns, Inc.*

*s/ Kathryn L .Avila*
Kathryn L. Avila., Esq.