UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| C.T., an individual, | CIVIL ACTION NO. 2:19-CV-5384 |
| Plaintiff, | **<u>Electronically Filed</u>** |
| RED ROOF INNS, INC; WYNDHAM HOTELS & RESORTS, INC.; BEST WESTERN INTERNATIONAL, INC.; and LA QUINTA HOLDINGS, INC., | Chief Judge Algenon L. Marbley Magistrate Judge Elizabeth Preston Deavers |
| Defendants. | |

**DEFENDANT BEST WESTERN INTERNATIONAL, INC.'S MEMORANDUM IN RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED <u>COMPLAINT</u>**

In response to Plaintiff's Motion for Leave to File an Amended Complaint, Defendant Best Western International, Inc. ("BWI") states:

The Court should not grant Plaintiff leave to amend her Complaint, as the proposed amendments are futile. Whether Plaintiff names additional parties or alleges new causes of action allegedly stemming from the "same conduct, transaction, or occurrence set forth…in the original pleading") (*see* Dkt. 55 at pp. 1 – 2) (internal citations omitted), this case is best suited for the Middle District of Florida. As set forth in BWI's Motion to Dismiss (*see* Dkt. 19 at pp. 7 – 8) and Memorandum in Reply (*see* Dkt. 48 at pp. 2 – 4), Plaintiff is a Florida resident, and all allegations of sex trafficking allegedly occurred in Fort Myers, Florida. Plaintiff's attempt to litigate this case in the Southern District of Ohio (a jurisdiction with no connection to the allegations) is nothing more than forum shopping. As there is no nexus between Plaintiff's alleged sex trafficking in Fort Myers, Florida and the Southern District of Ohio, the Court should deny Plaintiff leave to amend her Complaint.

The Court should also deny Plaintiff leave to amend her Complaint to allege conspiracy to violate the TVPRA and civil conspiracy. This Court has repeatedly held that an allegation of "beneficiary liability" under the TVPRA is based on a negligence standard. (*See M.A. v. Wyndham Hotels & Resorts, Inc.* 425 F. Supp. 3d 959, 965 (S.D. Ohio 2019); *H.H. v. G6 Hosp., LLC*, 2019 U.S. Dist. LEXIS 211090 at *9 (S.D. Ohio Dec. 6, 2019); *S.W. v. Lorain-Elyria Motel, Inc.*, 2020 U.S. Dist. LEXIS 44961 at *16 – 18. (S.D. Ohio Mar. 16, 2020). The Sixth Circuit holds that a cause of action for civil conspiracy cannot be premised upon an underlying tort of negligence. *In re Nat'l Century Fin. Enters., Inv. Litig*, 504 F. Supp. 2d 287, 327 (S.D. Ohio 2007) ("It is impossible to conspire to commit negligence."). Furthermore, BWI's purported membership in various trade associations is not a valid basis for alleging liability. *Clarkwestern Dietrich Bldg. Sys. LLC v. Certified Steel Stud Ass'n*, 2013 U.S. Dist. LEXIS 194260 at *10 (S.D. Ohio Dec. 20, 2013). Thus, Plaintiff cannot allege Defendants conspired to negligently permit Plaintiff's sex trafficking at the hotels identified in her proposed Amended Complaint.

## I.  THE MIDDLE DISTRICT OF FLORIDA IS THE APPROPRIATE FORUM FOR THIS CASE.

Plaintiff's claims against BWI do not arise out of or relate to any incident or event involving a Best Western branded hotel in Ohio. Instead, her claims against BWI relate to alleged human trafficking that occurred at a property in Fort Myers, Florida. *See* Dkt. 1, at ¶ 68; *see also* Dkt. 54-1 at ¶¶  13(e), 139(a) and 143. Plaintiff is not even an Ohio resident; she is a resident of Florida. *See* Dkt. 1, at ¶ 9; *see also* Dkt. 54-1 at ¶ 10. Plaintiff nonetheless argues this Court has personal jurisdiction because BWI works with various independently owned and

2

operated hotels in Ohio, even though they are not implicated in any of the alleged wrongdoing at issue in this matter. [1] *See* Dkt. 40, pp. 13-14.

Here, the allegations are brought by a Florida resident regarding hotels in Fort Myers, Florida. None of the alleged sex trafficking occurred in Ohio, let alone the Southern District of Ohio, and thus this forum has no connection with the controversy alleged in the Complaint or proposed First Amended Complaint. When the chosen forum has no connection with the controversy, forum is given "significantly less weight" when determining a motion to change venue. *Max Rack, Inc. v. Hoist Fitness Sys.*, 2006 U.S. Dist. LEXIS 13374 at *10 (S.D. Ohio Mar. 10, 2006), *citing Steelcase Inc. v. Smart Techs.*, 336 F. Supp. 2d 714, 720 (W.D. Mich. 2004). The plaintiff's chosen forum is afforded even less weight if it is not the plaintiff's home forum. *Max Rack, Inc.*, 2006 U.S. Dist. LEXIS at *10, *citing LG Electronics Inc. v. First Int'l Computer, Inc.*, 138 F. Supp. 2d 574, 589 (D.N.J. 2001); *see also Arters v. Sandoz, Inc.*, 2010 U.S. Dist. LEXIS 101197 at *13 – 14 (S.D. Ohio Sept. 27, 2010); *Am. Signature Inc. v. Moody's Investors Servs., Inc.*, 2010 U.S. Dist. LEXIS 68042 at *6 (S.D. Ohio July 2, 2010). There is no meaningful connection between the allegations in Plaintiff's proposed Amended Complaint, including her home forum of Florida and the venue of this Court. It cannot be said that BWI could reasonably anticipate being haled into an Ohio court in this matter, or that the Court should afford weight to plaintiff's decision to commence this action in Ohio.

In the interests of justice and judicial efficiency, there is an adequate, alternative forum for this case in the Middle District of Florida. Discovery will almost exclusively involve Florida-based documents and witnesses because the hotels are in Fort Myers, Florida, the alleged trafficking occurred in Fort Myers, Florida, and the Plaintiff lives in Florida. Plaintiff's counsel,

---

[1] BWI properly submitted exhibits to the Court in its motion to dismiss demonstrating that BWI does not own, operate or control the independently owned branded hotels and is not a principal, single or joint employer, or franchisor. *See* Dkt. 19-2 – 4.

who signed the response to BWI's Motion to Dismiss and moved for leave to amend the Complaint practices out of Pensacola, Florida. It is evident Plaintiff's chosen counsel is located in and adequately prepared to litigate this matter within Florida, as Count Three of the proposed Amended Complaint alleges Civil Conspiracy under Florida law. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n. 22 (1981); *see also Jones v. IPX Int'l Equatorial Guinea, S.A.*, 920 F.3d 1085, 1090-91 (6th Cir. 2019). Also, Florida has a local public interest in handling cases involving parties within its physical borders. *See Piper*, 454 U.S. at 255 (the "strong presumption" in favor of the plaintiff's choice of forum may be overcome when the private and public interest factors clearly point towards trial in the alternative forum"); *Down-Lite Int'l, Inc. v. Altbaier*, 2019 U.S. Dist. LEXIS 131081 at *6 (S.D. Ohio Aug. 6, 2019) (local interest in deciding local controversies at home is a public interest consideration for change of forum). Trying this case in the Middle District of Florida would be easier, more expeditious and less expensive than a trial in Ohio, as Florida based witnesses could be compelled to testify at trial within state borders, a public interest factor. *See Slate Rock Constr. Co. v. Admiral Ins. Co.*, 2011 U.S. Dist. LEXIS 97122 at * 21 (S.D. Ohio Aug. 30, 2011).

Unlike the Court's recent decision in *A.C. v. Red Roof Inns, Inc.*, 2:19-cv-4965, Dkt. 70 at p. 6 (S.D. Ohio June 16, 2020), this case involves allegations entirely borne from the State of Florida (over 1,000 miles away from this Court), not another judicial district within the State of Ohio. BWI refers the Court to *Sabol v. Ford Motor Co.*, 2014 U.S. Dist. LEXIS 152282 (Nov. 19, 2014), wherein this Court granted defendant's motion to change venue on similar facts. In *Sabol*, the plaintiff (a Delaware resident) commenced suit against the defendant (a Delaware corporation with a principal place of business in Michigan), asserting product liability claims in connection with a vehicle purchased and repaired in Pennsylvania. Plaintiff commenced the action in the Southern District of Ohio because a related case was pending before the Court. *Id.*

at *7 – 8. Defendant moved for transfer of venue to the Eastern District of Pennsylvania, which the Court granted.

In granting the motion, the Court first determined that basis of plaintiff's claim emanated from transactions exclusively within the Eastern District of Pennsylvania, and thus the Eastern District of Pennsylvania was a proper alternative forum. *Id*. at *10 – 12. The Court then determined public and private interests strongly favored transfer to the Eastern District of Pennsylvania. The Court negated the ordinary deference given to plaintiff's choice of venue because she was not an Ohio resident and none of the events giving rise to her claims occurred in Ohio (*id.* at 14 – 15), facts that weighed strongly in favor of transfer on public interest grounds. *Id*. at *26. The Court conceded that documents and evidence could be shipped to any forum, but took issue with plaintiff's inability to identify any evidence located in Ohio, contrasting defendant's identification of evidence readily available in Pennsylvania. *Id.* at *16. The Court also credited defendant's argument that essential trial witnesses were located more than 100 miles from the Southern District of Ohio and thus could not be compelled to testify at trial. *Id.* at *16 – 20.

The facts in this case are stunningly similar to those in *Sabol*. Here, Plaintiff is not a resident of Ohio and does not allege wrongdoing in Ohio. Conversely, she alleges the entirety of her alleged trafficking occurred in the Middle District of Florida. Essential trial witnesses, which would include the hotels' owners, operators, managers and employees are far more likely to be Florida residents than Ohio residents. If so, these witnesses would be well beyond the 100 mile radius of this Court's subpoena power under F.R.C.P. 45(c). Finally, Plaintiff has not, and cannot, identify evidence in Ohio to support any party's claims or defenses.

The interests in permitting the Middle District of Florida to preside over a case involving its citizens and property within its borders favor a change of venue. *MJR Int'l, Inc. v. Am.*

*Arbitration Assn'n.*, 2007 U.S. Dist. LEXIS 70436 at *7 – 8 (S.D. Ohio Sept. 24, 2007). Plaintiff's proposed Amended Complaint is futile, as none of the new or amended allegations change the overwhelming fact that the Middle District of Florida is the appropriate forum for this case. *See Ewalt v. Gatehouse Media Ohio Holding II, Inc.*, 2020 U.S. Dist. LEXIS 67774 at *3 (S.D. Ohio Apr. 17, 2020) ("this Court is charged with determining whether the futility of an amendment is so obvious that it should be disallowed."), *quoting Bear v. Delaware Cnty., Ohio*, 2015 U.S. Dist. LEXIS 56133 at *3 (S.D. Ohio Apr. 28, 2015).

## II. PLAINTIFF CANNOT ALLEGE CONSPIRACY TO COMMIT NEGLIGENCE.

Plaintiff's proposed First Amended Complaint includes additional inflammatory language and broad conclusions designed to diminish, negate and invalidate the hotel industry's and certain industry organizations' contributions to combatting clandestine human sex trafficking. Contradictorily, Plaintiffs alleges blatant displays of human sex trafficking at the hotels while alleging the same activities are "less visible to law enforcement" (*id.* at ¶ 125) but somehow simultaneously are visible to the hotel staff. (*id*. at ¶¶ 148 – 150, 153, 155) (*e.g.*, *id.* at ¶ 155: "Had Defendants been paying attention to the activities being conducted at their hotels and on their properties, they would have noticed the red flags outlined above **would have been impossible for them not to notice**, and the ongoing victimization of C.T. would have ceased." (Emphasis added).

Plaintiff is essentially suing the hotel industry and requiring it to prevent a global crime that governments around the world, including the United States, federal, state and local governments, task forces and police departments cannot stop. BWI condemns human trafficking in all forms; however, plaintiff cannot simply use the TVPRA as carte-blanche to sue the "hotel industry." As the United States Judicial Panel on Multidistrict Litigation recently recognized in

denying plaintiffs' requests for centralized litigation of TVPRA claims (including this case), hotels are not monolithic. *See In re Hotel Indus. Sex Trafficking Litig.*, 2020 U.S. Dist. LEXIS 19882 (J.P.M.L. Feb. 5, 2020). More important, at least one district court has expressly disavowed the construction that "Congress imposed duties upon business to affirmatively prevent sex trafficking on their hotel properties" or that "hotels (and other businesses or professional possibly earning money from trafficking)" are required "to affirmatively stop [sex] trafficking." *A.B. v. Marriott International, Inc.*, 2020 U.S. Dist. LEXIS 70644 at *18 (E.D. Pa. Apr. 22, 2020).

The conspiracy allegations in Plaintiff's proposed Amended Complaint are based on the notion that the hotel industry conspired to promote itself as "dedicated opponents of human trafficking" (*see* Dkt. 54-1 at ¶ 166), while simultaneously conspired to "maintain policies, practices and procedures" to permit financial benefit from "illegal sex ventures in violation of the TVPRA." *Id.* A significant portion of the First Amended Complaint (over 63 pages of the 90-page proposed Amended Complaint) criticizes the fundamental purpose of hotels, which is to provide temporary lodging accommodations with a modicum of privacy to its guests. Plaintiff has shown no facts to suggest that the Defendants worked together to ignore signs of sex trafficking occurring at independently-owned hotels or that Defendants' opposition to the sex trafficking industry is disingenuous.

In any event, it is impossible to conspire to commit negligence as Plaintiff's proposed Amended Complaint suggests. *See In re Nat'l Century Fin. Enters., Inv. Litig*, 504 F. Supp. 2d 287, 327 (S.D. Ohio 2007); *Ruth v. A.O. Smith Corp.*, 2005 U.S. Dist. LEXIS 23235 at *10 (N.D. Ohio Oct. 11, 2005) ("[T]he great majority of jurisdictions agree that conspiracy claims cannot be founded on the tort of negligence."); *Ho v. United States.*, 2012 U.S. Dist. LEXIS 184578 at *32 (D. Minn. Dec. 11, 2012) ("The law does not recognize a conspiracy to commit

negligence.") (internal quotation and citation omitted). This Court has repeatedly held that analysis of potential liability under the "beneficiary" clause of 18 U.S.C. § 1595(a) "is a **negligence standard** of constructive knowledge, not actual knowledge." *A.C.*, 2:19-cv-04965 at Dkt. 70, p. 9 (June 16, 2020) (Emphasis added); *M.A.*, 425 F. Supp. 3d at 965; *H.H.*, 2019 U.S. Dist. LEXIS 211090 at \*9; *S.W.*, 2020 U.S. Dist. LEXIS 44961 at \*16 – 18.

For Plaintiff to allege the hotel defendants conspired with her criminal traffickers, Plaintiff would have to allege the Defendants are liable under 18 U.S.C. 1591(a), which she has expressly denied in her Response to BWI's Motion to Dismiss. *See* Dkt. 40 at p. 20 ("Only one claim has been made against all Defendants in this case, which is violation of § 1595 on a beneficiary theory of liability."). Furthermore, a federal court exercising subject matter jurisdiction based on federal question cannot determine state common-law claims for civil conspiracy. *See Ayad v. Radio One, Inc.*, 412 F. Supp. 2d 716 (N.D. Ohio 2005).

Plaintiff's allegations of apparent and/or actual agency between BWI and the hotel identified in the proposed Amended Complaint are not supported by fact or law, another reason why the Motion for Leave to Amend the Complaint is futile. Public records from the Lee County Appraiser's Office and Clerk's Office show that BWI does not own the hotel. (*See* Dkt. 19-2 – 3). Furthermore, the membership agreement with the hotel's owner (which the Court should consider on BWI's pending Motion to Dismiss, *see McLaughlin v. CNX Gas Co., LLC*, 639 Fed. Appx. 296, 298 (6th Cir. 2016); *see also* Dkt. 19-1 at p. 8), reflects that BWI is not an agent of the hotel, does not employ anyone at the hotel, and that the hotel's owners – and not BWI – handle the hotel's day-to-day operations. *See* Dkt. 19-4 at p. 4, ¶ 17. The membership agreement identifies the actual owner of the hotel (not BWI) and states:

> BEST WESTERN [BWI] HAS NO RESPONSIBILITY FOR THE USE, CONDITION, MAINTENANCE, POLICIES, PRACTICES OR OPERATION OF THE HOTEL, NOR THE SAFETY OF THE DESIGN OF ANY

> STRUCTURE OR PRODUCT. BEST WESTERN [BWI] HAS NO CONTROL OVER OR RESPONSIBILITY FOR ANY DECISION RELATING TO OR AFFECTING THE EMPLOYMENT OR SUPERVISION OF ANY PERSON EMPLOYED AT OR PROVIDING SERVICES IN CONNECTION WITH THE HOTEL.

*Id.*; *see also Perkins v. Am. Spotting Co. of Ohio, Inc.*, 2018 U.S. Dist. LEXIS 223473 at *9 (S.D. Ohio Dec. 13, 2018) ("The allegation that ASCO directly controls the day to day operations of ASCO Ohio is conclusory without any further factual allegations concerning *how* ASCO controls said operations."); *accord Ackison Surveying LLC v. Focus Fiber Sols., LLC*, 2017 U.S. Dist. LEXIS 35502 at *9 (S.D. Ohio Mar. 13, 2017) (Marbley, J.); *Barrett-O'Neill v. Lalo, LLC*, 2014 U.S. Dist. LEXIS 109830 at *13 (S.D. Ohio Aug. 8, 2014) (franchisor's requirement of uniformity and standardization of franchisee's services does not give rise to an agency relationship); *Bricker v. R & A Pizza, Inc.*, 804 F. Supp. 2d 615, 623 (S.D. Ohio 2011) (dismissal of negligence claim against franchisor warranted where complaint lacked well-pled allegations that franchisor exerted control over franchisee's daily operations).

BWI also directs the Court to the National Labor Relations Board's February 26, 2020 final rule for determining joint-employer status under the National Labor Relations Act, which provides that a party is a joint employer if:

> (i) [the putative joint-employer] exercises direct and immediate control over one or more essential terms or conditions of employment of another entity's employees, (ii) that the control exercised over that essential term or those essential terms has a 'regular or continuous consequential effect" and is not "sporadic, isolated, or de minimis," and (iii) that the substantial direct and immediate control thus exercised over that essential term or those essential terms warrants finding that the putative joint employer 'meaningfully affects matters relating to the employment relationship' with another employer's employees.

*See* Joint Employer Status Under the National Labor Relations Act, 85 Fed. Reg. 11184, 11205 (Feb. 26, 2020); *see also* https://www.nlrb.gov/about-nlrb/what-we-do/national-labor-relations-board-rulemaking/standard-determining-joint-employer.

BWI does not exercise direct or immediate control over the employees who work at its independently owned and operated member hotels, and cannot be held liable as a joint employer.

### III.  BWI's MEMBERSHIP IN TRADE ORGANIZATIONS IS AN IMPROPER FOUNDATION FOR ALLEGING LIABILITY.

Plaintiff's proposed First Amended Complaint blanketly alleges Defendants used membership with national and state trade associations (the American Hotel and Lodging Association and the Ohio Hotel and Lodging Association, respectively) to further the "conspiracy" to negligently permit trafficking through brand hotels. *See* Dkt. 54-1 at ¶¶ 60 – 62. Setting aside the aforementioned principle that Defendants cannot conspire to commit negligence, and that the Ohio Hotel and Lodging Association is comprised only of hotels physically within the state (which has no bearing on the allegations of plaintiff's alleged trafficking in Fort Myers, Florida), membership in a trade organization or association alone cannot be the foundation for liability. *Clarkwestern Dietrich Bldg. Sys. LLC v. Certified Steel Stud Ass'n*, 2013 U.S. Dist. LEXIS 194260 at *10 (S.D. Ohio Dec. 20, 2013), *citing In re Welding Fume Prods. Liab. Litig.*, 526 F. Supp. 2d 775, 800 (N.D. Ohio 2007); *Cooley v. Lincoln Elec. Co.*, 776 F. Supp. 2d 511, 570  (N.D. Ohio 2011). Plaintiff has not demonstrated a plausible theory of liability against Defendants for civil conspiracy or conspiracy to violate the TVPRA by virtue of possible affiliation with trade associations. The Court should not permit Plaintiff to entertain such an untenable and futile theory in her pleadings.

### <u>CONCLUSION</u>

Permitting Plaintiff to amend her Complaint is futile and places the undue burden on BWI to re-file its Motion to Dismiss, which will ultimately waste time and judicial resources. It also bears repeating that the location of the substantial events alleged is Fort Myers, Florida. No matter how much Plaintiff amends the substance of her allegations or how many causes of action

she adds to the Complaint, including theories of civil conspiracy and conspiracy to violate the TVPRA, the Court should not ignore the crucial fact that the basis for this case is unequivocally rooted in Florida. As there is no conceivable theory to substantially link the events at issue (which occurred in Florida) with the Defendants' contacts in Ohio to establish sufficient personal jurisdiction or a convenient forum, no law permitting Plaintiff to allege conspiracy based on an underlying tort of negligence, and no nexus between possible memberships in trade associations and conspiracy to commit negligence, this Court should deny Plaintiff's Motion for Leave to Amend her Complaint in its entirety.

Dated: July 2, 2020

Respectfully submitted,

/s/ *Judd R. Uhl*

Judd R. Uhl (0071370)
LEWIS BRISBOIS BISGAARD & SMITH LLP
250 East 5th Street, Suite 2000
Cincinnati, Ohio 045202
Telephone: 513.808.9913
Facsimile: 513.808.9912
Judd.Uhl@lewisbrisbois.com
*Attorneys for Defendant*
*Best Western International, Inc.*

/s/ *Karen L. Campbell*

Karen L. Campbell (Admitted *Pro Hac Vice*)
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
77 Water Street, Suite 2100
New York, New York 10005
Telephone: 212.232.1300
Facsimile: 212.232.1399
Karen.Campbell@lewisbrisbois.com
*Attorneys for Defendant*
*Best Western International, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on the 2nd day of July, 2020, the foregoing was served on counsel of record through the Court's electronic filing system, and paper copies will be sent to all parties without an appearance by conventional mail.

/s/ *Judd Uhl*_____

Judd Uhl
