UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| C.T., an individual, | ) |
| Plaintiff, | ) |
| | ) Case No. 2:19-cv-05384-ALM-EPD |
| v. | ) |
| | ) Chief Judge Algenon L. Marbley |
| Red Roof Inns, Inc., *et al.*, | ) Magistrate Judge Elizabeth P. Deavers |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S CONSOLIDATED REPLY IN SUPPORT OF
PLAINTIFF'S MOTION FOR LEAVE TO AMEND**

COMES NOW the Plaintiff C.T. (the "Plaintiff"), by and through the undersigned counsel, and respectfully and timely submits her Reply in Support of Plaintiff's Motion for Leave to Amend (ECF No. 54). In support of her Motion, the Plaintiff provides the following law and argument.

**I.   INTRODUCTION**

On December 8, 2019, the Plaintiff C.T. filed her Complaint against Defendants Red Roof Inns, Inc. (hereinafter "RRI"), Wyndham Hotels & Resorts, Inc. (hereinafter "Wyndham"), La Quinta Holdings, Inc. (hereinafter "LQH"), and Best Western International, Inc. (hereinafter "BWI") asserting civil beneficiary liability claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595.  After further research and investigation into the facts of the case, the Plaintiff discovered new facts and information that led to her timely request for leave to amend. For example, Defendants worked together through representation by hotel and lodging trade associations such as the American Hotel and Lodging Association ("AHLA") and Ohio Hotel and Lodging Association ("OHLA") to lobby, successfully, against legislation that would hold them accountable for human trafficking. *See* Amended Compl., ECF

1

No. 54-1 at ¶ 75. In furtherance of their conspiracy, Defendants conspired and declined to implement policies or procedures known to prevent human trafficking across their branded properties in order to maximize profits and unfairly restrict trade and competition. *Id*. at ¶¶ 61, 63, 65.

On June 11, 2020, the Plaintiff filed her Motion for Leave to Amend the Complaint to: (1) include hotel and lodging trade organizations, AHLA and OHLA, as well as Defendants' subsidiaries as additional defendants, and (2) allege sufficient facts demonstrating a civil conspiracy among the Defendants. *See generally, id.* Defendants Wyndham, LQH, RRI, and BWI oppose the Plaintiff's Motion for Leave to Amend, once again deflecting the Plaintiff's allegations which hold them accountable under the TVPRA.

The amended complaint includes two new causes of action (1) conspiracy to violate the TVPRA, and (2) civil conspiracy. In summary, Plaintiff alleges that the Defendants entered into a conspiracy where, by and through their trade organizations the AHLA and OHLA, they determined not to implement policies and procedures in compliance with the TVPRA. *See* Amended Compl., ECF No. 54-1 at ¶¶ 63, 73, 75, 77, 83, 89. As a result, Defendants were able to treat their utter failure to stop profiting from trafficking ventures as an industry standard. Defendants together turned a blind eye to human trafficking, and continued to reap the profits from rooms rented to traffickers for the rape and torture of trafficking victims. *Id*. at ¶ 81, 85. As such, each Hotel Defendant benefited when the hotel Co-Defendants profited from trafficking ventures because it allowed for them to continue to nothing and take in profits from trafficking ventures. *Id*. Put another way, each Hotel Defendant benefited from the trafficking ventures on their hotel Co-Defendant branded properties. *Id*. at ¶ 65. Therefore, each Defendant violated the TVPRA when trafficking ventures occurred on their Co-Defendant's branded properties.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) provides that a party may amend its pleading with the court's leave and that the court should freely give leave when justice so requires. In deciding a party's motion for leave to amend, the Sixth Circuit has instructed district courts to consider several elements, including: undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendments. *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir.1998). In the absence of any of these findings, leave should be "freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Moreover, if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [she] ought to be afforded an opportunity to test [her] claim on the merits. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

"Rather than determining the actual legal sufficiency of the new claim [in a proposed amended complaint], in many cases it will suffice to determine if there is a substantial argument to be made on that question and, if so, to allow the amended pleading to be filed with the understanding that a motion to dismiss for failure to state a claim may follow." *Durthaler v. Accounts Receivable Mgmt., Inc.*, No. 2:10-cv-1068, 2011 U.S. Dist. LEXIS 121573, 2011 WL 5008552, at *4 (S.D. Ohio Oct. 20, 2011). *See also Vanburen v. Ohio Dep't of Pub. Safety*, No. 2:11-cv-1118, 2012 U.S. Dist. LEXIS 160907, 2012 WL 5467526, at *4 (S.D. Ohio Nov. 9, 2012) (holding that due to this "procedural roadblock," the better course would be to allow amendment of the complaint with the understanding that a motion to dismiss may follow filing of the amended complaint); *Research Inst. at Nationwide Children's Hosp. v. Trellis Bioscience, LLC*, No. 2:15-cv-3032, 2017 U.S. Dist. LEXIS 63108, 2017 WL 1487596, at *3 (S.D. Ohio Apr.

26, 2017) (same). Indeed, "it is usually a sound exercise of discretion to permit the claim to be pleaded and to allow the merits of the claim to be tested before the District Judge by way of a motion to dismiss." *Durthaler*, 2017 U.S. Dist. LEXIS 63108, 2011 WL 5008552, at *4. *See also Greenwald v. Holstein*, No. 2:15-cv-2451, 2016 U.S. Dist. LEXIS 192242, 2016 WL 9344297, at *5 (S.D. Ohio Feb. 3, 2016) (same).

### III. ARGUMENT AND AUTHORITIES

#### A. The Court Should Grant the Plaintiff's Motion for Leave to Amend her Complaint Because the Elements Weigh in Favor of Amendment

Defendants only challenge Plaintiff's amended complaint as futile.[1] Defendants' contentions with respect to futility, however, are without merit. This Court has jurisdiction to hear these claims, the Southern District of Ohio is the proper venue, and Plaintiff sufficiently states a claim for conspiracy. Moreover, the Court should **Grant** Plaintiff's Motion to Amend the Complaint because the issues raised by Defendants would be better addressed in a Rule 12 motion.

#### B. This Court Has Jurisdiction to Hear the Claims in Plaintiff's Amended Complaint and the Southern District of Ohio is the Proper Venue

##### 1. This Court Has Jurisdiction to Hear the Claims in Plaintiff's Amended Complaint

In deciding a matter of personal jurisdiction, when the court rules on a motion to dismiss without an evidentiary hearing, "the court must view the pleadings and affidavits in the light most favorable to the plaintiff" and the plaintiff "need only make prima facie showing of jurisdiction." *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir.1996) (citing *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991)). "The plaintiff can make this prima facie showing by

---

[1] Defendants do not challenge any other elements considered for amendment. Defendants do not challenge and concede that there was (1) no undue delay, (2) no bad faith, (3) no repeated failures to cure, (4) and no prejudice would arise if the Court granted leave for Plaintiff to file her amended complaint.

4

'establishing with reasonable particularity sufficient contacts between [the Defendants] and the forum state to support jurisdiction.'" *Capitol Specialty Ins. Corp. v. Splash Dogs, LLC*, 801 F. Supp. 2d 657 (S.D. Ohio 2011) (citing *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir.2002) (*quoting Provident Nat'l Bank v. California Savings & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir.1987)). Furthermore, the Court "**does not weigh** the controverting assertions of the party seeking dismissal." *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir.1996) (emphasis in the original) (quoting Theunissen v. Matthews, 935 F.2d 1454, 1459 (6th Cir.1991)).

As discussed in the Plaintiff's Consolidated Response in Opposition to Defendants Wyndham, LQH, and BWI's Motions to Dismiss, the Southern District of Ohio has proper personal jurisdiction over all Defendants in this case. *See generally*, ECF No. 40. The test for personal jurisdiction for a federal question requires only a due process analysis. *Id*. at 10 (citing *Capitol Specialty Ins. Corp. v. Splash Dogs, LLC*, 801 F. Supp. 2d 657, 663-64 (S.D. Ohio 2011)). The Defendants listed in the Plaintiff's Amended Complaint (ECF No. 54-1) are directly liable and indirectly liable for knowingly benefiting from participation in a venture which they knew or should have known was sex trafficking, as well benefiting from their participation in a conspiracy with co-conspirators to avoid compliance with the TVPRA by certain actions that would allow the members of the conspiracy to continue profiting enormously from human trafficking.

Defendant Wyndham wrongly argues that Plaintiff's allegations, including conspiracy do not establish personal jurisdiction. Defendant cites to *Moro Aircraft Leasing, Inc. v. Keith*, 789 F. Supp. 2d 841, 847 n.1 (N.D. Ohio 2011) and *Singh v. Daimler, AG*, 902 F. Supp. 2d 974, 981 (E.D. Mich. 2012) for this proposition. Each of these cases dealt with whether a conspiracy claim could establish jurisdiction when the defendant had no contacts with the forum state. In contrast, Plaintiff C.T. alleges that Defendants had significant contacts with the State of

5

Ohio. Defendant Wyndham, as well as the other Defendants, regularly transacts business in the State of Ohio, market in the State of Ohio, and derive revenue from transactions in the state of Ohio. *See* Amended Compl., ECF No. 54-1 at ¶ 12(a)(ii). Accordingly, Plaintiff is not utilizing a conspiracy claim to establish that Defendant hat the minimum contacts required to establish personal jurisdiction. Here, Defendants' own actions, in Ohio and by and through Ohio Defendants, establish personal jurisdiction.

Notwithstanding the fact that personal jurisdiction exists without needing to invoke conspiracy theory jurisdiction, Plaintiff points out that the Sixth Circuit has neither expressly adopted nor rejected the conspiracy theory of personal jurisdiction. *See Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1237 (6th Cir. 1981) (noting that the type of allegations sufficient to establish jurisdiction with a conspiracy). The law in this circuit is split, and many district courts have indeed applied the conspiracy theory of jurisdiction.[2] *See Ky. Speedway, LLC v. NASCAR*, 410 F. Supp. 2d 592, 599, 2006 U.S. Dist. LEXIS 4150, *19-20, (E.D. Ky. 2006) (utilizing conspiracy theory jurisdiction); *Gooch v. Life Investors Ins. Co. of Am. & Aegon United States*, 2008 U.S. Dist. LEXIS 143046, *16 (M.D. Tenn. 2008) (noting that Courts in Tennessee "allow the contacts of a foreign entity to be attributed to another entity's conduct in Tennessee under principles of conspiracy, agency and alter ego. *Chenault v. Walker*, 36 S.W.3d 45, 54-55 (Tenn. 2001)). "Under this doctrine, acts undertaken within the forum by one co-conspirator in

---

[2] Other courts have found that acts of a co-conspirator, performed in the forum state in furtherance of the conspiracy, constitute sufficient contacts to establish personal jurisdiction over an absent conspirator who has no other contact with the forum. *See McDonald v. St. Joseph's Hosp.*, 574 F. Supp. 123, 127 (N.D. Ga. 1983) ("The court recognizes the 'conspiracy theory of personal jurisdiction' whereby jurisdiction can be obtained over a nonresident conspirator who has insufficient direct contacts with the forum when substantial acts in furtherance of the conspiracy were committed in the forum"); *Cawley v. Bloch,* 544 F. Supp. 133, 135 (D. Md. 1982) (the conspiracy theory applies where the overt act was committed by a resident conspirator and had the nonresident conspirator committed the act, she would be subject to jurisdiction in the forum state); *Leasco Data Processing Equip. Corp. v. Maxwell,* 319 F. Supp. 1256 (S.D.N.Y. 1970) (establishing the conspiracy theory of personal jurisdiction).

furtherance of an alleged conspiracy may subject a non-resident co-conspirator to personal jurisdiction under the long-arm statute." *Id.*; *citing Second Amendment Foundation v. United States Conference of Mayors,* 348 U.S. App. D.C. 238, 274 F.3d 521, 524 (D.C.Cir. 2001) [**20] (citing *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,* 325 U.S. App. D.C. 117, 115 F.3d 1020, 1030-31 (D.C.Cir. 1997)) (applying conspiracy theory of personal jurisdiction to long-arm statute's "transacting business" subsection); *First Chicago International v. United Exchange Co.,* 267 U.S. App. D.C. 27, 836 F.2d 1375, 1377-78; *Edmond v. United States Postal Serv. Gen. Counsel,* 292 U.S. App. D.C. 240, 949 F.2d 415, 424-425 (discussing application of conspiracy theory undersection 13-423 (a)(3)). Although this Court could utilize the conspiracy theory of jurisdiction should it so decide, it does not need to because Plaintiff has alleged that Defendants purposefully availed themselves of the privilege of acting in the forum state or of causing a consequence in the forum state; (2) the cause of action arises from Defendants' contact with the forum state; and (3) Defendants' activities or consequences must have substantial connection with the forum state so as to make the exercise of jurisdiction over the defendant reasonable. *See National Can Corp. v. K Beverage Co.,* 674 F.2d 1134, 1137-38 (6th Cir. 1982)

All Defendants have purposefully availed themselves of jurisdiction in this Court. *See* Amended Compl., ECF No. 54-1 at ¶¶ 23-4. The "purposeful availment" requirement is satisfied when the defendant's contacts create a "substantial connection" with the forum state such that the defendant "should reasonably anticipate being haled into court there." *CompuServe Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985), and *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)). The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of

random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475 (internal quotation marks and citations omitted).

As alleged in Plaintiff's amended complaint, all Defendants have a significant nexus and relationship to Ohio. Red Roof Inns, Inc. ("RRI") has its principal place of business in Ohio. Amended Compl. at ¶ 11(a). Ohio Hotel and Lodging ("OHLA") resides in Ohio. *Id*. at ¶ 16. La Quinta Holdings, Inc. ("LQH"), La Quinta Franchising, LLC ("LQF") and La Quinta Management, LLC ("LQM") (collectively, the "La Quinta Defendants") have registered agents and corporate offices in Ohio. *Id*. at ¶¶ 14(a)-(c). As well-pled and alleged in the Plaintiff's proposed amended complaint, many of the Defendants' operations stem from Ohio, affecting branded properties in the state of Ohio and nationwide. *Id*. at ¶ 12(a) (Wyndham conducts and operates business throughout the state of Ohio, engages in business associations with other defendants, and regularly transacts business in Ohio through the operation of several hotels in Ohio and benefits from sex trafficking), ¶ 13 (BWI has several hotels in Ohio, regularly conducts and operates business throughout the state of Ohio, and engages in business associations with other defendants), ¶ 15 (the American Hotel & Lodging Association ("AHLA") dubs itself the "singular voice representing every segment of the hotel industry," including major chains such as the Defendants listed herein and has encouraged avoidance of compliance with federal laws related to trafficking).

Defendant Wyndham also wrongly contends that Ohio's long arm statute does not apply. This argument suffers from a fundamental misunderstanding of Plaintiff's claims. Ohio's long-arm statute permits jurisdiction over a defendant where the cause of action arises from a defendant's "[t]ransacting any business in [Ohio]". Ohio Rev. Code § 2307.382(A)(1). As interpreted by the Ohio courts, "the broad wording of the statute permits jurisdiction over non-

8

resident defendants who are transacting any business in Ohio." *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 511 (6th Cir. 2006). The phrase "transact" means "to *prosecute negotiations*; to carry on business; *to have dealings*." *Id*. (quoting *Kentucky Oaks Mall v. Mitchell's Formal Wear*, 53 Ohio St.3d 73, 75, 559 N.E.2d 477 (1990) (emphasis in original). Under Ohio law, "personal jurisdiction does not require physical presence in the forum state." *Goldstein v. Christiansen,* 70 Ohio St.3d 232, 236, 1994 Ohio 229, 638 N.E.2d 541 (1994). As to the "arising from" requirement, the Sixth Circuit has said that "[i]f a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contracts." *CompuServe Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996).

In the instant action, Plaintiffs cause of action arises from Defendants failure to implement policies and procedures, which it did across the country including in its branded locations in Ohio. *See Complaint Generally.* Moreover, Defendants contacts with the OHLA and RRI are related to the operative facts of this case in that their dealings resulted in a decision to avoid compliance with the TVPRA which gave rise to the conditions that allowed rampant human trafficking on their premises, including the trafficking of Plaintiff. Therefore, the Court has jurisdiction under Ohio's long arm statute.

Furthermore, Court has jurisdiction under Ohio's long arm statute because "[c]ausing tortious injury by an act or omission in this state." Ohio Rev. Code § 2307.382(A)(3). Plaintiff alleges in her complaint that Defendant engaged in actions by and through OHLA and with RRI in the state of Ohio, and that these actions, as well as others, lead to and caused the injury to Plaintiff. *See Complaint Generally.*

For the reasons stated above, and in Plaintiff's response to the prior motions to dismiss, the Court has jurisdiction to hear this case. The Court should therefore Grant Plaintiff's motion for leave to amend her complaint.

### 2. The Southern District of Ohio is the Proper Venue

Defendants' requests for a transfer of venue, particularly for the reasons of efficiency and convenience beg credulity. The Defendants in this case (excluding OHLA) are *national* brands or associations that do business across the country, and this case concerns Defendants actions on a nationwide scope. Litigation of this case will likely require depositions of individuals residing in a number of states. Moreover, the necessary and proportional production of documents will likely result in millions of pages stored on servers located in different states.

On the other hand, Ohio serves as the most convenient forum for this litigation. Two of the defendants have their principal place of business in Ohio. Many of the Defendants in this case are already defending a number of other related cases already before this Court. Therefore, by keeping this case in this venue, the Defendants and their lawyers will not have to suffer the burden of having to fly all about the country to defend trafficking cases in multiple different courts. In this venue, Defendants will have the convenience of and ability to defend these matters through informal coordination opportunities that that will save them considerable time and money.

Furthermore, this venue preserves judicial economy. The allegations and claims in this case and other sex trafficking cases before this Court are not only complex, but the issues in this case are personally and emotionally taxing. This Court has already demonstrated a willingness to take on the burden of hearing these cases, and this Court's service will help its sister courts in managing their heavy caseloads. Evidenced by the six related cases pending in this jurisdiction, this Honorable Court has developed an expertise in TVPRA claims against hotel chains such as the

Defendants named herein and has set the precedent with respect to establishing TVPRA beneficiary claims. *See generally*, *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019) (Marbley, J.).

Despite the clear convenience of this venue, Defendants argue fervently for another jurisdiction. For some reason, Defendants do not want this Court to hear these cases. Defendants instead want to transfer this case, and other trafficking cases, to far flung states and jurisdictions. Defendants make a request that would result in Plaintiff feeling isolated, vulnerable, and forced to battle giant hotel brands alone.

For the reasons stated above, this Court has jurisdiction to hear this case, and the Court should use its discretion to keep this case in this venue. Accordingly, the Court should grant Plaintiff's Motion to Amend her complaint.

### C. Plaintiff's Civil Conspiracy Claim is Premised on the underlying TVPRA claim.

Defendant BWI argues that Plaintiff's civil conspiracy claim is futile because it is premised on the underlying tort of negligence. (ECF No. 58 at 2.) Instead, Plaintiff has alleged conspiracy claims related to the TVPRA. Specifically, whether the Defendants conspired to suppress, conceal, ignore, or otherwise avoid liability.

In its response, Defendant BWI cites to *In re Nat'l Century Fin. Enters., Inv. Litig*, 504 F. Supp. 2d 287, 327 (S.D. Ohio 2007) for the proposition that it is impossible to conspire to commit the tort of negligence. But, *In re Nat'l Centre Fin. Enters. Inv. Litig*. and the other cases cited by Defendant BWI all deal with claims of conspiracy to commit the actual tort of negligence *i.e.*, conspiracy to commit negligent misrepresentation. And those cases articulate an underlying legal doctrine that makes practical sense: negligent torts are carelessness that result in harm, and it is

not possible to conspire to be careless but you can conspire to intentionally and collaboratively, as an industry, fail to solve a known problem in order to increase profits

Defendant BWI then turns to the instant case, and argues that Plaintiff has claimed conspiracy to commit negligence due to the fact a constructive knowledge standard is used in a civil TVPRA claim. (ECF No. 58 at 2.) Defendant BWI seems to be arguing that Plaintiff cannot assert a conspiracy claim because constructive knowledge is a standard that draws concepts from negligence. Defendant BWI's position, however, does not follow from the law and cases it cites.

First, Plaintiff's amended complaint does not allege a claim for conspiracy to commit a negligence tort. Plaintiff's amended complaint alleges civil conspiracy, and TVPRA conspiracy. Both claims are distinct from one and other as described in the facts above, but both involve the violation of the TVPRA.

A TVPRA claim for civil liability is a statutory claim. As articulated by this Court, a beneficiary claim under the TVPRA requires the plaintiff to allege that a person or entity "knowingly benefited from participation in a venture in which it knew or should have known was engaged in [sex trafficking]." 18 U.S.C. § 1595(a); *See M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019) (Marbley, J.). This Court does not state that the constructive knowledge standard in a TVPRA claim, transform this claim into a negligence tort claim.[3]

Defendant BWI stands on a steep and slippery slope arguing that Plaintiff's conspiracy claims related to the TVPRA are in fact claims of conspiracy to commit negligence. Although constructive knowledge is a concept borrowed from common law tort doctrine, the utilization of a constructive knowledge standard does not transform a claim into a negligence claim. Under

---

[3] Of Course, Defendants may be liable for negligence too—it just is not the basis for their conspiracy claim.

12

Defendant BWI's theory, parties could no longer conspire to commit to violate an unknown number of laws. The constructive knowledge standard is used to analyze all types of claims across many areas of law. For example, under the Fair Labor Standards Act, courts in this circuit use a constructive knowledge standard for determining whether employers are liable for unpaid wages. *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 388 (6th Cir. 2016) ("constructive knowledge of something, exists when the employer "should have discovered it through the exercise of reasonable diligence."). The use of a constructive knowledge standard under the FLSA does not thereby transform an FLSA claim into a negligence claim, nor does it eliminate the potential to conspire to violate the FLSA.

Let's take the example one step further and consider the following hypothetical. Two Employers (Employer 1 and Employer 2) do not want to pay what they consider exorbitant overtime wages. Employer 1 and Employer 2 conspire together and decide to eliminate all payroll policies, processes, and procedures that document when employees work such that it would be all but certain their employees would not get paid for all hours worked. Employer 1 and Employer 2 are also members of the same industry trade association, and they roll out their pay policy industry-wide through the association as the new industry standard. Under this new industry standard, employees over 40 hours a week and do not get paid overtime.

In the above hypothetical, Employer 1 and Employer 2 conspired to violate the FLSA. And the hypothetical above is very similar to the facts alleged in the instant case. Here, Plaintiff alleges that Defendants conspired by and through their trade organization to avoid compliance with the TVPRA. The motivation for Defendants' conspiracy is simple—money. Compliance with the TVPRA would not only be an expensive endeavor, requiring the implementation of policies and training of employees—it would result in Defendants turning down a significant amount of

revenue and branding that is generated from trafficking ventures and franchising opportunities based on the idea that once the agreement is signed the brand is exempt from liability. Plaintiff's conspiracy and conspiracy in violation of the TVPRA claims are not claims that Defendants conspired to the tort of negligence.

At the end of its section on conspiracy claims, Defendant BWI makes statements contesting the truth of Plaintiff's allegations in the amended complaint and references documents that it claims support its position. (ECF No. 58 at 9.) For instance, Defendant BWI argues that it is not a joint employer or that certain contracts show that it contracts away its obligation under the TVPRA not to profit from trafficking ventures. Despite that Plaintiff claims direct liability on the part of the Brand Defendant, Plaintiff would also argue the agreements highlight Plaintiff's conspiracy to develop ways out of liability under TVPRA. Regardless, these arguments are premature and better suited to a summary judgment motion at the close of discovery. At this stage of the case, the Court accepts the factual allegations as true. And, the factual allegations in Plaintiff's amended complaint, accepted as true, are sufficient to state her claims related to conspiracy. The Court should therefore Grant Plaintiff's motion for leave to file her amended complaint.

> **D. Plaintiff Has Alleged Sufficient Facts to Plead a Conspiracy Claim Against Defendants, and that Defendants Engaged in that Conspiracy by and through Their Trade Associations**

Defendant BWI spends an entire section arguing that membership in a trade organization on its face is not sufficient to establish liability for a conspiracy. Plaintiff agrees. That is why Plaintiff's amended complaint contains a multitude of factual allegations related to the conspiracy in which Defendant BWI engaged. Plaintiff's complaint does not merely allege that Defendant BWI violated the law by virtue of its membership alone.

Defendant misrepresents the holdings in all three cases that it cites on this issue, as well as Plaintiff C.T.'s allegations, suggesting that Plaintiff cannot utilize membership and participation

in a trade organization as evidence of a conspiracy. (ECF No. 58.) In truth, the law cited by Defendant BWI on this point supports the sufficiency of Plaintiff's amended complaint. For example, Defendant BWI quotes *Clarkwestern Dietrich Bldg. Sys. LLC v. Certified Steel Stud Ass'n*, No. 1:13-CV-818, 2013 WL 12121519 (S.D. Ohio Dec. 20, 2013) out of context. BWI correctly asserts that, "membership in a trade organization or association alone cannot be the foundation for liability." *Id.* at 3; *see* Def. BWI's Response, ECF No. 58 at 10. However, critically, BWI fails to include the very next statement by the court in that case which clarifies that, "However, a member may be liable for its tortious actions taken while acting on behalf of its association, including personally engaging in, directing, or assisting others in engaging in the tortious conduct." *Id.* (citing *Simmons v. Cook*, 701 F. Supp. 2d 965, 989-90 (S.D. Ohio 2010) ("Corporate officers may be held personally liable for Lanham Act violations" if "they personally take part in the infringing activity or direct others to do so."); No. CIV.A. 2:07-CV-1290, 2008 WL 5156613 (S.D. Ohio Dec. 8, 2008) (rejecting corporate officer's "fraudulent joinder" argument in deceptive trade practices action, stating "[a]t a minimum, it is unclear what role [the officer] plays in the publication of the [newspaper] in his capacity as president of the entity that publishes that newspaper. If the evidence, after an opportunity for discovery, establishes that [officer] participated in the publication of the offending newspaper, Ohio law recognizes a cause of action against this corporate officer.")). In fact, *Clarkwestern* ultimately held that the plaintiff in that case alleged sufficient facts to support liability against the trade organization for civil conspiracy and granted the plaintiff's motion for remand. *Id.* at 5.

Furthermore, although the *In re Welding Fume Prods. Liab. Litig.*, 526 F. Supp. 2d 775, 805, 2007 U.S. Dist. LEXIS 80806 (N.D. Ohio 2007) court granted summary judgment related to an alleged conspiracy involving trade associations, it stated that a conspiracy claim involving

associations could survive. The *In re Welding Fume Prods. Liab. Litig.* court even provided a case and explained a factual scenario that could be pursued under a conspiracy claim, as "a conspiracy claim against asbestos manufacturers based on the allegation that '[m]embers of the referenced trade associations suppressed publication as well as general dissemination of medical and scientific data concerning the health hazards associated with inhalation of asbestos fibers.'" *Id.*, citing *Nicolet, Inc. v. Nutt,* 525 A.2d 146, 148 (Del. 1987); *Cipollone v. Liggett Group, Inc.,* 683 F. Supp. 1487 (N.J. 1988) (denying a motion for directed verdict on a claim that tobacco manufacturers conspired to misrepresent the safety of cigarettes, noting that manufacturers had gone so far as to create a purportedly independent research organization to promulgate false information); *City of New York v. Lead Industries Ass'n, Inc.,* 190 A.D.2d 173, 597 N.Y.S.2d 698 (N.Y. Sup. Ct. 1993) (denying a motion to dismiss a claim that five manufacturers of lead-based paint conspired, through their co-defendant trade organization, to misrepresent the safety of their product and conceal their knowledge of its hazards); *Sackman v. Liggett Group, Inc.,* 965 F. Supp. 391 (E.D.N.Y. 1997) (denying summary judgment on a claim that tobacco companies engaged in a conspiracy through their co-defendant trade association).

   The third case cited by Defendant BWI is *Cooley v. Lincoln Elec. Co.,* 776 F. Supp. 2d 511 (N.D. Ohio 2011). This case powerfully supports the plaintiff's allegations of civil conspiracy by the hotel defendants through their joint activities via defendant trade associations. The *Cooley* court denied the defendants' motion for directed verdict and held that, "there is substantial evidence from which a jury could reasonably conclude defendants worked together at AWS meetings to devise a common plan to provide inadequate warnings to welders about the risks associated with manganese in welding fumes." *Id.* at 573. These facts are analogous to C.T. 's allegations which include more than mere membership in a trade association. In *Cooley*,

16

manufacturers of steel products conspired together through their activity and membership in their trade organization, AWS, to provide inadequate warnings which ultimately harmed plaintiff welders. Similarly, in the present case, C.T. alleges that Hotel Defendants and Association Defendants conspired with each other to both purport to the public that they were doing everything possible to prevent and eradicate human trafficking at their branded properties while simultaneously collectively refusing to implement brand-wide policies and procedures to prevent human trafficking, which ultimately harmed C.T. See Amended Compl., ECF No. 54-1 at ¶¶ 55, 61, 63.

Under federal and Ohio law, activity occurring through trade association membership can give rise to liability, including civil conspiracy liability, for both the trade association, and its members. *Hogan v. Cleveland Ave Rest. Inc.*, No. 2:15-CV-2883, 2018 WL 1475398, at *5 (S.D. Ohio Mar. 26, 2018) (*citing Am. Soc. of Mech. Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 578, 102 S. Ct. 1935, 1948, 72 L. Ed. 2d 330 (1982)). In this case C.T. has alleged more than mere membership in a trade association but rather collective tortious activity by Hotel Defendants conducted through and with the assistance of Associations Defendants. Therefore, the Court should grant Plaintiff's Motion for Leave to File her amended complaint.

## V. CONCLUSION

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court enter an Order Granting the Plaintiff's Motion to file her First Amended Complaint *instanter*.

Dated this 23rd day of July 2020.

                                             Respectfully submitted,

                                             */s/ Steven C. Babin, Jr.*
                                             Steven C. Babin, Jr. (0093584)

BABIN LAW, LLC
1320 Dublin Road, #100
Columbus, Ohio 43215
T: 614-384-7035
E: steven.babin@babinlaws.com

*/s/ Kathryn L. Avila*
Kathryn L. Avila (*pro hac vice*)
Fla. Bar. No. 1019574
Kimberly L. Adams (*pro hac vice*)
Fla. Bar. No. 0014479
Levin, Papantonio, Thomas, Mitchell,
Rafferty & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, Florida 32534
T: 850-435-7056 | F: 850-436-6056
E: kavila@levinlaw.com / kadams@levinlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all counsel of record.

Dated this 23rd day of July, 2020.

*s/ Kathryn L. Avila*
Kathryn L. Avila, Esq.
